NO. 07-02-0416-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 17, 2004

_____

ROBERT C. "BOB" NICHOLS A/K/A R. C. "BOB" NICHOLS, APPELLANT

V.

CLAUDIA LIGHTLE AND EDWIN LEE MURRAY, APPELLEE

_____

FROM THE 411TH DISTRICT COURT OF SAN JACINTO COUNTY;

NO. 9880; HONORABLE ROBERT H. TRAPP, JUDGE

_____

Before JOHNSON, C.J. and REAVIS and CAMPBELL, JJ.

**OPINION**

Appellant Robert C. "Bob" Nichols (Nichols) presents three issues challenging a summary judgment for appellee Claudia Lightle (Claudia), quieting title to some 420 acres[1] in San Jacinto County and denying his counterclaim in trespass to try title. We affirm.

---

[1]The actual acreage at issue comprises 419.283 acres. For convenience, we use the phrase "the 420 acres" to refer to the property described in the August 3, 1999 substitute trustee's deed to appellee Claudia Mercer Lightle.

**Factual and Procedural Background**

Talmadge Ott owned property located in San Jacinto County, adjacent to a tract in the John Bricker Survey owned by Nichols. In 1976, Ott conveyed his property to Nichols' wife Francis Nichols as trustee.[2] The property was described in the deed from Ott as "all the land in the M.P. Clark Survey and the John Bricker Survey, San Jacinto County, Texas, which I own or claim," including two described ten-acre tracts, one of which contained Ott's house, "together with all remaining properties under my fences and which I have used over a long period of years."

In 1983, Nichols executed two deeds of trust in favor of First National Bank of Trinity (the Bank), mortgaging several tracts. The deeds of trust are not in the record. Although they apparently encompassed at least two tracts in the M. P. Clark Survey, among other tracts, the record is not clear to what extent the land subject to the deeds of trust included land conveyed by Ott's deed to Frances Nichols.[3] In any event, on October 4, 1988, the Bank foreclosed the liens under both deeds of trust.

Edwin Murray and his wife Dianne Murray acquired the 420 acres from the Bank by deed dated October 13, 1993, and executed a deed of trust of the same date in favor of

---

[2]There is no suggestion in the record for whose benefit, or on what terms, Frances Nichols was acting as trustee. She is not a party to this litigation, individually or as trustee. The record does not address her absence.

[3]The judgment entered by the trial court in the cause now on appeal clearly is grounded, though, on the conclusion that the 420 acres at issue here is the same property on which the Bank later foreclosed. As is discussed later in this opinion, Nichols has not contested that conclusion.

-2-

the Bank. Neither of these documents have been included in the record before us. In October 1997, the Murrays were divorced, each retaining an undivided one-half interest in the property. In an unrelated but significant development, appellee Claudia Lightle and Thomas "Sandy" Lightle were divorced on May 28, 1998.

In June 1999, Dianne Murray executed a deed to Nichols for her undivided interest in the 420 acres. On a date not shown in the record, Edwin Murray filed suit against Nichols in the 411th District Court of San Jacinto County, seeking an injunction preventing Nichols from interfering with his use of the 420 acres. This action was assigned cause number 9691. On July 6, 1999, Nichols brought suit in 258th District Court of San Jacinto County against Claudia, who he alleged had purchased the Murrays' note secured by the 420 acres from the Bank, and attorney Fritz Faulkner, alleged to be acting as substitute trustee under the deed of trust. Nichols there also alleged he owned an undivided one-half interest in the property, and "through some misleading field notes used by a surveyor for [another bank], the mortgaged property was located over onto the southwestern 100 acres in the M.P. Clark Survey, which was not supposed to be included within his survey. 10 acres of the overlap is owned by Frances Nichols, Trustee[.]" Nichols sought to enjoin foreclosure of the deed of trust lien granted by the Murrays, among other relief. This action was given cause number 9809. On July 30, 1999, the 411th District Court rendered judgment in cause number 9691 temporarily enjoining Nichols from interfering with Edwin Murray's use of the 420 acres during the pendency of the suit, finding that Murray had established 100 of the 420 acres as his homestead, and awarding damages against

Nichols. The written judgment was signed August 2nd. Nichols brought an appeal from that judgment.[4]

On August 3, 1999, the lien under the Murrays' deed of trust to the Bank was foreclosed. Claudia was the high bidder at the foreclosure sale, and Faulkner as substitute trustee conveyed the 420 acres to Claudia for $120,000. The property description contained in this deed described the 420 acres in five tracts, three of them in the M.P. Clark Survey, and made reference to the October 13, 1993 deed to the Murrays, in which the tracts were said to be more particularly described.

Shortly after this foreclosure, Sandy Lightle executed a deed to Nichols, dated August 11, 1999, purportedly conveying his "undivided one-half community interest" in the 420 acres.[5] An affidavit executed in connection with the deed shows that Sandy had not overlooked his divorce from Claudia, but said a common-law marriage had arisen after the divorce and before she purchased the property. It said Claudia "bought . . . the property for the amount of the note for our account as community property." The assertions were repeated in a second affidavit Sandy executed in September 1999.

---

[4]Claudia's brief states that cause numbers 9691 and 9809 were consolidated but does not state when or refer to an order consolidating the cases. The August 2, 1999 judgment in cause number 9691 did make reference to Nichols as defendant and cross-plaintiff, and to Claudia as cross-defendant. It awarded damages against Nichols both to Murray and Claudia.

[5]We express no opinion on the question of the interest that would have been conveyed by the deed if it had been community property of Sandy and Claudia Lightle.

Nichols recorded the deed from Sandy on September 29, 1999. Some time in the fall of 1999, First Bank & Trust of Cleveland, Texas ("FBT") sought to execute on Nichols' interest in the 420 acres to satisfy a judgment it apparently held against him. Claudia filed her original petition in this action against Nichols and FBT on December 2, 1999, asserting that Nichols had no interest in the property and citing, *inter alia*, the judgment entered in cause number 9691. She sought an injunction against execution on the property by FBT pending resolution of the appeal in cause number 9691.

The trial court held a hearing in this case on December 22, 1999, at which FBT's attorney conceded that no execution on the property was pending. Nevertheless, the court heard testimony from Claudia, Sandy and Nichols. Claudia testified that she never remarried Sandy after their divorce, that he abused cocaine and suffered psychological problems, that he was occasionally homeless, and that she sometimes provided him with food and work and let him sleep at her home irregularly. She denied entering into a common law relationship.

Sandy testified that the statements in his August and September 1999 affidavits were false, that he was under the influence of cocaine at the time and did not read the August deed or affidavit before signing them. Nichols testified that he paid Sandy $11,500 of an agreed $50,000 for his interest in the 420 acres, and that Sandy did not appear to be under the influence of drugs when he signed the deed and affidavit. At the conclusion of the hearing the court temporarily enjoined execution on any of the property pending a final hearing.

Before a final injunction hearing, Claudia nonsuited her claim against FBT. Some months later, and after dismissal of the appeal of cause number 9691,[6] Nichols filed a counterclaim of trespass to try title against Claudia alleging he was the owner in fee simple of certain tracts,[7] under deeds and by adverse possession. He asserted that he was unlawfully dispossessed of the tracts, giving the date of his ouster as January 1, 1999.[8] The pleading also named Edwin Murray as a third party defendant, alleging that Murray had joined Claudia in the unlawful dispossession. Alternatively, the petition alleged Nichols was a tenant in common with Claudia and Murray in the entire 420 acres.

Claudia then filed a second amended petition and answer to Nichols' counterclaims. This pleading converted Claudia's suit for an injunction into one to quiet title. Claudia sought to cancel the deed from Dianne Murray to Nichols, and the deed from Sandy to Nichols, and to quiet title in the 420 acres in her.[9] The petition challenged Nichols' claim of adverse possession, primarily on the basis that it was interrupted by the 1988

[6]The Ninth Court of Appeals dismissed the appeal of cause number 9691 pursuant to an agreed motion to dismiss on June 22, 2000.

[7]The first tract was described by metes and bounds in the M.P. Clark Survey, the second was 100 acres consisting of portions of the 420 acres at issue, as described in the October 13, 1993 deed to the Murrays.

[8]*See* Tex. R. Civ. P. 783.

[9]*See generally* 5 F. Lange & A. Leopold, Texas Practice 2d: Land Titles and Title Examination §§ 1091-96 (1992); *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex.Civ.App.– Corpus Christi 1977, writ ref'd n.r.e.) (discussing distinction between statutory trespass to try title action and suit to quiet title).

foreclosure.  In further explication of her claims, Claudia stated she was not asserting any claim to tracts owned by Nichols that adjoined the 420 acres.[10]

At the same time, Claudia filed a traditional motion for summary judgment. She asserted that the deed from Sandy to Nichols should be canceled because he had no interest to convey.  As support she relied on the 1998 divorce decree, the deed to her individually, her own testimony at the prior hearing, and that of Sandy, that they never remarried.  She asserted the deed from Dianne Murray to Nichols should be canceled because her interest in the 420 acres was terminated by the August 1999 foreclosure and trustee's sale to Claudia. The motion also cited the order in cause number 9691 enjoining Nichols from interfering with Edwin Murray's use of the 420 acres. The motion addressed Nichols' counterclaims, attaching copies of the 1988 substitute trustee's deeds by which the liens under the 1983 deeds of trust to the Bank were foreclosed.

Nichols filed an amended counterclaim, reasserting his claims of adverse possession and alleging in the alternative that he was a tenant in common with Claudia, and seeking partition.  He also responded to Claudia's motion for summary judgment, arguing it should be denied "as regards the 100 acre tract" described in an exhibit to his

--------

[10]The disclaimer language, which appeared in almost identical form in Claudia's second amended petition and in her motion for summary judgment, read as follows:

Defendant [Nichols] admittedly owns various tracts of land which join the subject property (420 acres) on one side or the other.  Plaintiff makes no claims to any of defendant's 160 acre homestead in the John Bricker Survey, nor the 80.8345 acres (known as the dump) that defendant described in his pleadings, nor the 100 acres of defendant's that lies outside the boundaries of the 420 acres which is the subject of this suit.

counterclaim because of Claudia's disclaimer in her second amended petition. He also provided several affidavits in support. The first was from a surveyor named C.A. McKinley that described a rectangular 100-acre tract in the northwest portion of the M.P. Clark Survey. Nichols made his own affidavit reciting the deed from Talmadge Ott to Frances and claiming it included "the entire southwest 100 acres of the northwest 300 acres" of the Clark Survey. The affidavit stated that Nichols had moved a house onto the property purchased from Ott and moved Ott's house to another location. It also recited the names of persons who lived in that house at various times, including Claudia and Sandy.

Nichols also submitted the affidavit of his son Robert Charles Nichols, which recited his familiarity with the land, and sought to describe the land claimed by Talmadge Ott. Kenneth W. Hill made an affidavit that stated he was familiar with the land, attempted to describe the 100 acre tract conveyed to Frances Nichols with relation to the surrounding tracts, and stated that he had lived in the house on that tract briefly in 1985. An affidavit from Billy Mills averred that he did work, paid for by Nichols, on "Bob Nichols' wife's house off the end of Walker Road north of Midway," and that Edwin Murray was present and, after initially objecting to Mills' presence, later had acquiesced in Nichols' claim of ownership of the house.

Nichols' response also included Sandy Lightle's August 11, 1999 affidavit and another affidavit dated June 23, 2000. In the latter affidavit Sandy stated he was not under the influence of cocaine in August 1999 when he executed the deed to Nichols and that he testified falsely in court, having been threatened by Claudia. The affidavit also reasserted his claim that a common law marriage was established after their 1998 divorce

-8-

and before Claudia purchased the 420 acres, concluding: "We have had a normal marriage since the divorce." The affidavits of Hollys Heasley and Molly Wells, who had notarized Sandy's signatures on his August 1999 and June 2000 affidavits, also were included.

The trial court granted Claudia's motion for summary judgment and denied Nichols' counterclaims by a written order signed June 27, 2002. That order described the land at issue as the 420 acres described in the August 3, 1999 deed to Claudia. The court cancelled and declared invalid the deeds from Sandy Lightle and Dianne Murray to Nichols, and granted Claudia judgment against Nichols, quieting title to the 420 acres in her. After filing a motion for new trial, Nichols timely perfected this appeal.

### Issues on Appeal

Nichols now presents three issues for our review. They are that the trial court erred in granting summary judgment: (1) on the basis that the deed from Sandy conveyed no title; (2) because it disregarded evidence concerning his counterclaim for 100 acres; and (3) finding his claims were barred by *res judicata*. He has not challenged the judgment's cancellation of his deed from Dianne Murray.

The standards applicable to review of summary judgments are well established, and a detailed recitation of them is unnecessary. *See* Tex. R. Civ. P. 166a. It is sufficient to note a movant has the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. We take evidence favorable

to the non-movant as true, and indulge every reasonable inference in favor of the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

## Sandy Lightle Deed

Nichols makes two arguments in support of his first issue. He first argues that the excerpts from the reporter's record of the December 22, 1999 hearing, which were attached to Claudia's summary judgment motion and which reflected the testimony of Claudia and Sandy that they did not remarry after their divorce, were not proper summary judgment evidence because they were not accompanied by authentication by the court reporter or other verification. Claudia correctly notes Nichols' argument raises a defect of form and Nichols' failure to present a timely objection in the trial court waived any error. Tex. R. Civ. P. 166a(f); *Jones v. Jones*, 888 S.W.2d 849, 852 (Tex.App.--Houston [1st Dist.] 1994, writ denied).[11]

Nichols also quotes *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372 (Tex. 1984), for the proposition that "if there is no file mark on a statement of facts or any other indication it was considered by the trial court at the time the motion for summary judgment was sustained, it may not be considered on appeal." We do not find that holding applicable here. In *Munoz*, the non-movant sought reversal based on testimony he had not presented to the

---

[11] *Trimble v. Gulf Paint & Battery, Inc.* 728 S.W.2d 887 (Tex.App.–Houston [1st Dist.] 1987, no writ), cited by Nichols, is not to the contrary. That case holds the absence of a jurat on a purported affidavit is not just a formal defect but is substantive and not waived by failure to bring it to the trial court's attention. Citing the Government Code definition of "affidavit," Tex. Gov't Code Ann. § 312.011, and other authority, the court noted that a purported affidavit missing the jurat is not an affidavit but simply an unsworn statement and not competent summary judgment proof. 728 S.W.2d at 889.

trial court in response to the motion for summary judgment. Here, the relevant portions of the reporter's record were presented to the trial court. They were attached as an exhibit to Claudia's motion for summary judgment and the trial court's order recites that he considered the summary judgment evidence. *Richman Trusts v. Kutner*, 504 S.W.2d 539 (Tex.Civ.App.–Dallas 1973, writ ref'd n.r.e.), cited in *Munoz*, supports the finding that the testimony was properly before the court here. In *Richman* the court refused to consider a reporter's record that was never filed in the trial court and was not "incorporated by reference in either the motion for summary judgment or the reply thereto." *Id.* at 541. Claudia did not merely incorporate the testimony by reference, she attached a copy of it to her motion.

Nichols next argues his affidavit and those of Sandy Lightle, Kenneth Hill, Molly Wells and Hollys Heasley establish the existence of a genuine question of fact on the formation of a common law marriage between Sandy and Claudia after their 1998 divorce and before she acquired the 420 acres in August 1999. Claudia responds that the affidavits are insufficient. The issue is material because of the presumption that property acquired by either spouse during marriage is community property. Tex. Fam. Code ann. § 3.03 (Vernon 1998).

The elements of a common law, or informal, marriage are: (1) a man and woman agreed to be married; (2) after the agreement they lived together in Texas as husband and wife; and (3) they represented to others in the state that they were married. Tex. Fam. Code ann. § 2.401 (Vernon 1998). In conformity with the standards applicable to summary

judgment review, we will ignore Sandy's testimony in open court that he did not remarry Claudia. Because we conclude that the summary judgment evidence does not raise a genuine question of fact concerning the third element, we focus only on the evidence relevant to that issue. We first consider whether Sandy's affidavits raise a genuine question of fact whether Sandy and Claudia represented to others in Texas that they were husband and wife after their divorce.

In his August 1999 and September 1999 affidavits Sandy stated: "A few days after our divorce, we went back to living together as common law husband and wife. We lived together, consummated the marriage, had the intent of being husband and wife, and held out to others that we were husband and wife." In addition to the statement already noted, Sandy's June 23, 2000 affidavit asserted, "I am the husband of Claudia M. Lightle by common law marriage." Like the earlier affidavits, it stated that following their divorce he and Claudia "went back to living together," and had regular sexual relations, "just as we did before the divorce." Speaking of events following their divorce, it also stated, "After getting out of jail, I came back home, and we lived together as husband and wife, just as we had always done. She advised at least one witness whom I remember that 'we are husband and wife.'"

Claudia also argues the affidavits are conclusory. Challenges to summary judgment affidavits as conclusory allege a defect in substance rather than form and may be asserted for the first time on appeal. *Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 225 (Tex.App.–El Paso 2002, no pet.). To avoid being conclusory, an affidavit must contain specific factual bases, admissible in evidence and upon which conclusions are drawn. *Id.* An affidavit

-12-

consisting only of conclusions is not sufficient to raise an issue of fact. *Id.*; *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Life Ins. Co. of Virginia v. Gar-Dal, Inc.*, 570 S.W.2d 378, 381-82 (Tex. 1978). The statements relative to the third element in Sandy's August 1999 and September 1999 affidavits simply paraphrase the statutory language, stating "we held out to others that we were husband and wife." The affidavits contain no specific factual bases for the statements; the statements are conclusory and not sufficient to raise a genuine issue of fact on the element of representations of marriage to others.

The statement in Sandy's June 2000 affidavit is barely more specific. There, Sandy stated that Claudia advised at least one person they were married. The affidavit does not give the name of the person, or when, where or under what circumstances the statement was made. Perhaps we reasonably can infer that the statement was made in Texas, since the record makes no reference to any event occurring outside our state. And perhaps we can infer that the statement was made after the divorce and before Claudia's purchase of the 420 acres.[12] But even if we draw from the statement all the inferences that are reasonable, it is not sufficient to raise a genuine issue of fact as to whether Sandy and Claudia's relationship met the third statutory element. At most, the statement reflects only isolated references, which is not evidence of "holding out" to others that a marriage exists. *Ex parte Threet*, 333 S.W.2d 361, 364 (Tex. 1960); *Winfield v. Renfro*, 821 S.W.2d 640, 651 (Tex.App.–Houston [1st Dist.] 1991, writ denied). Neither of Sandy's affidavits contains

---

[12]All three of the required elements of a common law marriage must exist at the same time. *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex.App.–San Antonio 1987, no writ); *Gary v. Gary*, 490 S.W.2d 929, 935 (Tex.Civ.App–Tyler 1973, writ ref'd n.r.e.).

-13-

evidence sufficient to raise a genuine issue of fact on the third element of a common law marriage. *See* Tex. R. Civ. P. 166a(f).

We next examine whether any of the other affidavits offered by Nichols filled the gap left by Sandy's affidavit. Nichols' affidavit contained only one statement relevant to this issue, that referring to the house on the disputed property and stating: "Claudia Lightle and Sandy Lightle live there at the present time, or at least they frequently occupy it at night." This statement provides support for the second element of common law marriage, that of living together, but is not probative of the third element. The same is true for the other affidavits. Kenneth Hill's affidavit stated he saw Claudia and Sandy going to and from the house on the Clark Survey and they introduced themselves to him by first name only. Molly Wells and Hollys Heasley made no statement in their affidavits concerning representations of marriage between Sandy and Claudia. None of these affidavits provide evidence that Sandy and Claudia represented to others that they were married. The summary judgment record does not show the existence of a genuine question of fact on whether Claudia and Sandy were married at the time of her purchase of the 420 acres. We overrule Nichols' first issue.

### Counterclaim on Hundred Acres

In his second issue Nichols challenges the summary judgment for Claudia denying his counterclaim to a 100-acre tract of the M. P. Clark Survey described in an exhibit to his pleadings. Nichols' arguments in support primarily recite his summary judgment evidence. As we read his arguments, his position is that (1) Claudia is bound by the admission in her

-14-

pleadings disclaiming any interest in Nichols' adjacent land, (2) she failed to establish that the 420 acres encompasses the 100-acre tract claimed by Nichols, and (3) he established his title to the 100-acre tract by tracing his title to Talmadge Ott.

Nichols' first argument makes too much of the language contained in Claudia's second amended petition,[13] by which she disclaimed the 100 acres "that lies outside the boundaries of the 420 acres." We do not agree that it constitutes an admission contrary to her claim to quiet title to the described 420 acres.

Nor can we agree with Nichols' arguments that summary judgment was improper because Claudia failed to present evidence showing whether the 420 acres included any part of the 100 acres he described and claimed. Such proof was irrelevant to her ability to establish conclusively her cause of action to cancel the deed from Sandy Lightle and quiet title to the 420 acres as against Nichols' claims. The summary judgment evidence established that Claudia acquired title to the land described in the October 13, 1993 deed to the Murrays, by an August 3, 1999 deed from the substitute trustee to her. Her summary judgment evidence also established that the deed from Sandy Lightle on August 11, 1999, conveyed no title.

With respect to Nichols' third argument, as noted, among the grounds set forth in Claudia's motion for summary judgment was the 1988 foreclosure of Nichols' interest in the 420 acres. Nichols' discussion of the summary judgment evidence tracing his interest

[13]Nichols also points to differences in the disclaimer language in Claudia's second amended petition and a late-filed third amended petition. We need not address that issue because our analysis and conclusion would be the same under either petition.

-15-

in the 100-acre tract omits any mention of his 1983 mortgage and the 1988 foreclosure of that mortgage. Nor has he presented any challenge to the subsequent 1993 sale to the Murrays, or the foreclosure and sale to Claudia in August 1999. Moreover, neither at trial nor before this court has Nichols contested the proposition that the 420 acres conveyed to Claudia was the same property subject to the 1988 foreclosure of his interest. He does not contend that the summary judgment evidence raises an issue of fact concerning that proposition.[14] To any degree the 100-acre tract made the basis of Nichols' counterclaim in this litigation overlaps with the 420 acres,[15] that part of the 100-acre tract must be regarded as properly subject to the trial court's judgment. The trial court did not err in granting judgment on this summary judgment record quieting title to the 420 acres in Claudia as against the claims asserted by Nichols. His second issue is overruled.

Conclusion

Our disposition of appellant Nichols' first two issues makes review of his third issue unnecessary. The trial court's judgment is affirmed.

James T. Campbell
Justice

---

[14]We note that Nichols' pleadings in this litigation did not assert the claim of a surveying error and ten-acre overlap he made in cause number 9809.

[15]This is a determination that cannot be made based on the record before us, and one that we view as irrelevant to the trial court's judgment quieting title to the 420 acres in Claudia. To the extent that acreage described in Nichols' counterclaim lies outside the boundaries of the 420 acres, we view it as unaffected by the trial court's judgment.