

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00350-CV

In the **ESTATE OF** Gilbert **CAMPOS**, Deceased

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2018-PC-0959
Honorable Oscar J. Kazen, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: April 15, 2020

AFFIRMED

Gabriel Tavitas appeals from a probate court judgment denying his application for a determination of heirship. In his heirship application, Tavitas alleged he was the common law spouse and the only heir of Gilbert Campos ("the decedent."). The decedent's brother, Paul Campos Jr. ("Campos"), opposed the heirship application, filed his own heirship application, and moved for summary judgment, arguing that Tavitas was not married to the decedent at the time of his death. The probate court granted Campos's summary judgment motion and denied Tavitas's heirship application. Additionally, the probate court granted Campos's heirship application and

declared Campos the sole heir of the decedent's estate. On appeal, Tavitas presents two issues challenging the part of the judgment denying his heirship application.[1] We affirm.

## BACKGROUND

On February 13, 2018, the decedent died intestate. On March 19, 2018, Tavitas filed an application for a declaration of heirship, alleging he was the decedent's common law spouse and his heir. *See* TEX. EST. CODE ANN. §§ 202.005, 201.002, 201.003. On May 28, 2018, Campos, the decedent's brother, filed pleadings opposing Tavitas's heirship application and asserting that he was the decedent's only heir. *See id*. § 201.001(a),(e).

On December 17, 2018, Tavitas's lawyer, Derek Morales, filed a motion to withdraw as counsel, claiming he was "unable to effectively communicate with [] Tavitas in a manner consistent with good attorney-client relations."

On December 31, 2018, Campos moved for traditional and no-evidence summary judgment. In support of his traditional summary judgment motion, Campos claimed he served discovery[2] on Tavitas's counsel, including requests for admissions, on September 28, 2018; the discovery responses were due on October 29, 2018; and no discovery responses were served. Campos relied on deemed admissions stating that Tavitas was not married to the decedent at the time of his death, that Tavitas was not the decedent's heir and was not entitled to any share of the decedent's estate, and that Campos was the decedent's only heir and the sole distributee of his estate. Campos argued that the deemed admissions conclusively established that no marriage

---

[1]Tavitas does not present any issues challenging the part of the judgment granting Campos's heirship application and declaring Campos the sole heir of the decedent's estate. Therefore, the only part of the judgment at issue on appeal is the part of the judgment denying Tavitas's heirship application. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex. 1993) (recognizing that an appellate court may not reverse a trial court's judgment for a reason not raised in an issue on appeal).

[2]The discovery included interrogatories, requests for production, and requests for admissions. The requests for admissions are the only discovery at issue in this appeal.

existed between Tavitas and the decedent and that Tavitas was not the decedent's heir. In his no-evidence summary judgment motion, Campos argued there was no evidence of either a formal or informal marriage between Tavitas and the decedent. More specifically, Campos expressly challenged the existence of evidence to support the elements of both formal and informal marriage.

On February 21, 2019, Morales filed a second motion to withdraw as counsel, once again claiming he was "unable to effectively communicate with [] Tavitas in a manner consistent with good attorney-client relations."

On April 12, 2019, Morales filed a motion to withdraw deemed admissions on Tavitas's behalf. Morales supported this motion with his own affidavit in which he testified: (1) he did not receive Campos's requests for admissions on September 28, 2018; (2) he did not know about the requests for admissions until December 31, 2018, when he received Campos's summary judgment motion; (3) when he learned about the unanswered requests for admissions he immediately tried to contact Tavitas; (4) he was unsuccessful in contacting Tavitas because Tavitas's phone number was no longer a working number; (5) Tavitas did not call Morales until March 3, 2019; (6) Morales went to Tavitas's house to meet with him and to obtain responses to the discovery; and (7) Morales sent the discovery responses to Campos's counsel immediately after meeting with Tavitas.[3]

Campos opposed the motion to withdraw deemed admissions, urging the probate court to deny the motion because Tavitas had shown a conscious indifference and callous disregard for the rules of civil procedure. Campos emphasized Tavitas's lack of diligence in filing the motion to withdraw deemed admissions, pointing out that even though Tavitas's counsel learned of the deemed admissions on December 31, 2018, he waited more than three months, until April 12, 2019, to file a motion to withdraw deemed admissions.

---

[3]The record shows these discovery answers were served on Campos's counsel on April 10, 2019.

After a hearing, the probate court denied Tavitas's motion to withdraw deemed admissions, granted Campos's summary judgment motions, and denied Tavitas's heirship application. The probate court also granted Campos's heirship application and rendered judgment declaring Campos the sole heir of the decedent's estate. Tavitas appealed.

### DENIAL OF MOTION TO WITHDRAW DEEMED ADMISSIONS

In his first issue, Tavitas argues the probate court abused its discretion in denying his motion to withdraw deemed admissions. According to Tavitas, the probate court was required to grant his motion to withdraw deemed admissions under the Texas rules of civil procedure and the relevant caselaw.

*Standard of Review*

"A trial court has broad discretion to permit or deny the withdrawal of deemed admissions." *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996). With respect to the resolution of factual issues or matters committed to the trial court's discretion, an abuse of discretion does not occur unless "the trial court could reasonably have reached only one decision." *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992); *see Goode v. Shoukfeh*, 943 S.W.2d 441, 454 (Tex. 1997) (Gonzalez, J., concurring) ("[F]or the trial court to abuse its discretion, there must have been only one reasonable decision, and the trial court must have gone against this decision."). "Even if the reviewing court would have decided the [factual] issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Walker*, 827 S.W.2d at 840; *see Authorlee v. Tuboscope Vetco Int'l*, 274 S.W.3d 111, 118-19 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "An appellate court should set aside the trial court's ruling only if, after reviewing the entire record, it is clear that the trial court abused its discretion." *Stelly*, 927 S.W.2d at 622.

*Applicable Law*

The Texas rules of civil procedure permit a party to serve on another party "written requests that the other party admit the truth of any matter within the scope of discovery." TEX. R. CIV. P. 198.1. The responding party must respond to requests for admissions within thirty days. TEX. R. CIV. P. 198.2(a). "If a response is not timely served, the request is considered admitted without the necessity of a court order." TEX. R. CIV. P. 198.2(c). Therefore, when a response to a request for admission is not timely served, the matter is automatically deemed admitted. *See id*. "A matter admitted under this rule is conclusively established" "unless the court permits the party to withdraw or amend the admission." TEX. R. CIV. P. 198.3. Requests for admissions are intended to simplify trials by addressing uncontroverted matters or evidentiary ones such as the authenticity or admissibility of documents; they are not intended to cause a plaintiff or a defendant to admit that he has no cause of action or no ground of defense. *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011); *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005); *Stelly*, 922 S.W.2d at 622. "[W]hen a party uses deemed admissions to try to preclude presentation of the merits of a case," "due-process concerns arise." *Wheeler*, 157 S.W.3d at 443.

Generally, a trial court may permit a party to withdraw a deemed admission if (1) the party shows good cause for withdrawal of the admission, (2) the court finds the party relying on the deemed admission will not be unduly prejudiced by the withdrawal, and (3) the presentation of the merits will be served by the withdrawal. TEX. R. CIV. P. 198.3; *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 664 (Tex. App.—San Antonio, pet. denied). "'Good cause' can be shown when a party's failure to answer 'was accidental or the result of a mistake, rather than intentional or the result of conscious indifference.'" *Time Warner*, 441 S.W.3d at 665; *see Stelly*, 922 S.W.2d at 622. "Good cause also exists when due process concerns are implicated by deemed admissions that act as a merits-preclusive discovery sanction, absent bad faith or callous disregard on the part of the

party requesting withdrawal." *Time Warner*, 441 S.W.3d at 665 (citing *Marino*, 355 S.W.3d at 634). Therefore, the test used to determine "good cause" depends on whether the deemed admissions are being used to try to preclude the presentation of the merits of the case. *See Wheeler*, 157 S.W.3d at 443; *Time Warner*, 441 S.W.3d at 664-65.

Deemed admissions are merits-preclusive and implicate due process if they are used to establish controverted issues that constitute ultimate legal issues in a case. *Time Warner*, 441 S.W.3d at 666. When deemed admissions are merits-preclusive, good cause exists requiring the trial court to allow their withdrawal unless the evidence shows the party requesting withdrawal acted with "flagrant bad faith or callous disregard for the rules." *Wheeler*, 157 S.W.3d at 443; *Time Warner*, 441 S.W.3d at 666. The burden of showing "flagrant bad faith or callous disregard" is on the party opposing the withdrawal of deemed admissions. *Time Warner*, 441 S.W.3d at 666.

*Analysis*

On appeal, Tavitas argues all three requirements for withdrawal of deemed admissions were satisfied in this case. *See* TEX. R. CIV. P. 198.3; *Time Warner*, 441 S.W.3d at 664. We begin our analysis by considering the good cause requirement. To determine the applicable good cause standard, we must first decide if the deemed admissions were merits-preclusive.[4] The ultimate legal issues in Tavitas's heirship application were whether Tavitas and the decedent were married and whether Tavitas was the decedent's heir and entitled to inherit the decedent's estate. Three of the deemed admissions squarely addressed these issues: the admission that Tavitas was not married to the decedent at the time of his death, the admission that Campos was the decedent's only heir and the sole distributee of his estate, and the admission that Tavitas was not the decedent's heir and was not entitled to any share of the decedent's estate. The probate court's order granting

---

[4]Although on appeal Campos argues that the deemed admissions in this case were not merits-preclusive, Campos's counsel agreed at the hearing below that some of the deemed admissions were merits-preclusive.

summary judgment states "there is no genuine issue of material fact as to [Campos's] claim that [] Tavitas [] was not married to [d]ecedent at the time of his death." We conclude the deemed admissions were merits-preclusive and, therefore, implicated due-process concerns. Therefore, the burden was on Campos to negate the existence of good cause by demonstrating that Tavitas acted with flagrant bad faith or callous disregard of the rules. *See Time Warner*, 441 S.W.3d at 666.

Tavitas argues that Campos did not meet this burden because the record contains no evidence of Tavitas's flagrant bad faith or callous disregard of the rules. Tavitas asserts that the flagrant bad faith or callous disregard standard requires a showing that he "was being dishonest, discriminatory, or malicious in not responding to the request[s] for admissions." However, Tavitas misunderstands the flagrant bad faith or callous disregard standard. Although "a lack of care, simple bad judgment, or a mistaken belief that no discovery had been served does not rise to the level of bad faith or callous disregard for the rules," evidence showing that "a party is mindful of pending deadlines and nonetheless either consciously or flagrantly fails to comply with the rules" satisfies the standard. *Ramirez v. Noble Energy, Inc.*, 521 S.W.3d 851, 860 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "A failure to respond that is intentional or the result of conscious indifference is the equivalent of a nonresponding party's 'flagrant bad faith or callous disregard for the rules.'" *Carter v. Perry*, 02-14-00185-CV, 2015 WL 4297586, at *3 (Tex. App.—Fort Worth July 9, 2015, no pet.).

We review the record to determine if it contains any evidence of Tavitas's flagrant bad faith or callous disregard for the rules to support the denial of the motion to withdraw deemed admissions. *See In re Rozelle*, 229 S.W.3d 757, 764 (Tex. App.—San Antonio 2007, orig. proceeding). The evidence includes Morales's affidavit in support of the motion to withdraw deemed admissions, in which Morales testified that he learned of the unanswered discovery on December 31, 2018, and he "immediately" "tried to contact my client [Tavitas]" but was

"unsuccessful at getting a hold of my client at this time." Morales went on to testify: "The phone number I had for Mr. Tavitas was no longer a working number. I tried diligently to reach Mr. Tavitas and was unable to reach him." Morales also testified that after he was unable to reach Tavitas, he filed a motion to withdraw as counsel[5] and set this motion for hearing on March 4, 2019. However, the day before the hearing, Tavitas called Morales's office. In a phone conversation, Tavitas told Morales that he had been assaulted and his car and his phone had been stolen. Morales testified: "Communicating and meeting with Mr. Tavitas at our office has been a hardship because of his current predicament. I even drove to his house in order to meet with him [] to get the responses to the discovery requests."

Additionally, the evidence includes factual statements made by Morales at the hearing on the motion to withdraw deemed admissions. "Normally, an attorney's statements must be under oath to be considered evidence." *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). However, "[u]nsworn factual statements and representations by an attorney can constitute evidence supporting the trial court's ruling, where the opponent to the testimony waives the oath by failing to object 'in circumstances that clearly indicated each was tendering evidence on the record based on personal knowledge' on the contested issues." *In re Estate of Arndt*, 187 S.W.3d 84, 87 (Tex. App.—Beaumont 2005, no pet.) (quoting *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005)); *see Banda*, 955 S.W.2d at 272 (holding statements an attorney made to the trial court about a settlement agreement were some evidence of the agreement when the opposing party did not object); *Anderson v. Safeway Tom Thumb*, No. 02-18-00113-CV, 2019 WL 2223582, at *12 (Tex. App.—Fort Worth May 23, 2019, pet. denied) (concluding the trial court was "free to depend on [] counsel's statements as evidence" when the statements were not objected to and they involved

---

[5]The record shows Morales's second motion to withdraw as counsel was filed on February 21, 2019.

"facts within [the lawyer's] personal knowledge" concerning the lack of receipt of discovery responses).

At the hearing, Morales stated the first time he learned of Campos's requests for admissions was on December 31, 2018, when he received Campos's summary judgment motions. During the first week in January 2019, Morales tried to contact Tavitas to tell him about the deemed admissions, but he was unable to reach Tavitas because his phone had been disconnected. Morales indicated that Tavitas was responsible for the lack of communication: "I'm saying the client failed to communicate." Morales also stated he filed a second motion seeking to withdraw as counsel and Tavitas called him the day before the hearing on the motion. Morales believed Tavitas called him because he received the motion to withdraw. In their phone conversation, Morales told Tavitas that he needed to come to the office to answer the discovery requests. Nevertheless, Tavitas did not go to Morales's office, and Morales and Tavitas had no further contact until April 2019, when Morales "went to [Tavitas's] house and knocked on his door and finally got hold of him and had him sign off on the [a]dmissions. Then that is when I sent them off."[6] No one objected to these factual statements, which were within Morales's personal knowledge. Therefore, the probate court could have considered Morales's statements in determining if Tavitas engaged in flagrant bad faith or callous disregard for the rules.

Tavitas argues the probate court was required to find that the delay in responding to the admissions was excused by the December 22, 2018 incident, in which Tavitas was assaulted and his car and his phone were stolen. Yet, the probate court was not required to make such a finding. First, even if Tavitas's phone number had changed in January and February 2019, Morales's phone number and address had not changed. Nothing prevented Tavitas, who knew that his heirship

---

[6]The record shows Morales sent Tavitas's discovery responses to Campos's counsel on April 10, 2019.

application remained pending, from contacting Morales. At a minimum, Tavitas should have contacted his lawyer and provided him with his new phone number. Second, even before the December 22, 2018 incident, Tavitas failed to maintain appropriate communication with counsel. Both of Morales's motions to withdraw as counsel were based on Morales's inability "to effectively communicate with [] Tavitas in a manner consistent with good attorney-client relations." Third, Tavitas's other contact information, such as his address, had not changed. In February 2019, Morales sent Tavitas his second motion to withdraw as counsel and Tavitas received the motion. In fact, after Tavitas received the motion, Tavitas called Morales's office on March 3, 2019, the day before the hearing. Finally, during the phone call, Morales told Tavitas that he needed to come to his office to meet and prepare responses to the unanswered discovery; however, an additional five weeks passed before such a meeting took place. This meeting occurred only after Morales made the effort to go to Tavitas's home and meet with Tavitas there.

In sum, the motion to withdraw deemed admissions was not filed until April 12, 2019. This was more than three months after Morales learned about the deemed admissions and five weeks after Tavitas learned about the deemed admissions. The probate court could have reasonably concluded that the December 22, 2018 incident did not excuse Tavitas's delay in filing the motion to withdraw deemed admissions, that Tavitas had exhibited a callous disregard for the rules by not maintaining contact and cooperating with Morales, and that the additional delay in filing the motion after Tavitas was told about the deemed admissions was intentional or the result of conscious indifference. Based on this evidence, the probate court could have reasonably concluded that Tavitas engaged in flagrant bad faith or callous disregard for the rules by delaying the filing of the motion to withdraw deemed admissions. *See In re TT-Fountains of Tomball, Ltd.*, 01-15-00817-CV, 2016 WL 3965117, at *11 (Tex. App.—Houston [1st Dist.] July 21, 2016, orig. proceeding) ("[T]he length of time that a response is tardy may factor into whether a party acts

with the requisite state of mind sufficient to deny his motion to withdraw when he is aware of being served with discovery."); *Darr v. Altman*, 20 S.W.3d 802, 808 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("While not receiving the requests for admissions would have constituted good cause for allowing the withdrawal of the deemed admissions, waiting three months after receiving the motion for summary judgment with the attached requests to either answer the requests or move to withdraw the deemed admissions vitiated that good cause.").

After considering the entire record, we conclude it shows no abuse of discretion. *See Stelly*, 927 S.W.2d at 622 (noting that a trial court did not commit a clear abuse of discretion when it based its decision to deny a motion to strike deemed admissions on evidence in the record). With regard to the resolution of factual issues, an abuse of discretion does not occur unless the court below "could reasonably have reached only one decision." *Walker*, 827 S.W.2d at 840; *see Goode*, 943 S.W.2d at 454 (Gonzalez, J., concurring) (recognizing that for the trial court to abuse its discretion in resolving factual issues there must be "only one reasonable decision, and the trial court must have gone against this decision."). Because there was some evidence to support a finding of flagrant bad faith or callous disregard for the rules, Campos negated the existence of good cause, and the probate court did not abuse its discretion in denying the motion to withdraw deemed admissions. Because the probate court could have reasonably concluded that good cause did not exist in this case, we need not determine if the other requirements for the withdrawal of deemed admissions were satisfied. We overrule Tavitas's first issue.

### SUMMARY JUDGMENT

In his second issue, Tavitas argues the probate court erred in granting summary judgment and denying his heirship application because he produced sufficient evidence to raise a genuine issue of material fact as to the existence of a common law marriage.

Campos moved for summary judgment on both traditional and no-evidence grounds, arguing (1) the deemed admissions conclusively established that Tavitas and the decedent were not married at the time of his death, and (2) no evidence existed to support the elements of a formal or an informal marriage between Tavitas and the decedent. Tavitas filed a summary judgment response. The response did not assert that Tavitas and the decedent were formally married; it only asserted that Tavitas and the decedent had an informal or common law marriage. Tavitas attached evidence to his summary judgment response, including his responses to Campos's requests for production.

*Effect of the Deemed Admissions*

Before we consider if the evidence raised a fact issue as to the existence of a common law marriage, we determine if the deemed admissions had a conclusive effect. Generally, "[a]dmissions, once deemed by the court, may not be contradicted by any evidence, including summary judgment affidavits." *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 502 (Tex. App.—San Antonio 2004, pet. denied) (citing *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989)). "Any matter established by way of a request for admission[] is conclusively established as to the party making the admission, unless on motion, it is withdrawn or amended with the permission of the court." *Id*. at 502-03.

Nevertheless, a party may waive the conclusive effect of deemed admissions by failing to object to the presentation of controverting evidence. *Marshall*, 767 S.W.2d at 700 (concluding a party waived his right to rely upon admissions by failing to object to controverting evidence during trial). This is true even in summary judgment proceedings. *Willowbrook*, 147 S.W.3d at 503 (recognizing that admissions could be waived in the summary judgment context by a failure to object to controverting evidence); *Acevedo v. Comm'n for Lawyer Discipline*, 131 S.W.3d 99, 105 n.3 (Tex. App.—San Antonio 2004, pet. denied) (assuming without deciding that *Marshall*'s

waiver rule applies in the summary judgment context); *contra Beasley v. Burns*, 7 S.W.3d 768, 770 (Tex. App.—Texarkana 1999, pet. denied) ("In cases involving summary judgments, the trial court cannot consider affidavits offered by the nonmovant to contradict the deemed admissions.").

Here, Campos does not contend that he objected to Tavitas's summary judgment evidence based on the conclusive nature of the deemed admissions, and we have found no such objection in the record. Because Campos did not object to Tavitas's summary judgment evidence, he waived the conclusive effect of the deemed admissions. *See Marshall*, 767 S.W.2d at 700; *Willowbrook*, 147 S.W.3d at 503. Therefore, we will consider the evidence attached to Tavitas's summary judgment response to determine if it contradicts the deemed admissions and raises a genuine issue of material fact as to the existence of a common law marriage.

*Evidence Not Attached to the Summary Judgment Response*

In arguing that he presented evidence raising a genuine issue of material fact, Tavitas cites three affidavits that were not attached to his summary judgment response and only appear in the appendix to his brief. "We may not consider documents attached to an appellate brief that are not part of the appellate record." *Canton-Carter v. Baylor College of Medicine*, 271 S.W.3d 928, 931 n.2 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see Billelo v. Techline Serv., L.P.*, 372 S.W.3d 232, 235 (Tex. App.—Dallas 2012, no pet.). "A non-movant may not 'supplement' the summary judgment record on appeal with earlier-filed evidence or any other evidence." *Billelo*, 372 S.W.3d at 235; *see Gibson v. Grocers Supply Co.*, 866 S.W.2d 757, 760 n.4 (Tex. App.—Houston [14th Dist.] 1993, no writ) (recognizing that an affidavit attached to the appellant's brief was not part of the appellate record and could not be considered as evidence by the appellate court). Therefore, we cannot consider the affidavits that were not submitted with Tavitas's summary judgment response.

*Summary Judgment Standard of Review*

We review the grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). In deciding whether the trial court properly granted summary judgment, we review the evidence in the light most favorable to the nonmovant and indulge every reasonable inference and resolve any doubts against the motion. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). Summary judgment burdens differ depending on whether the motion seeks summary judgment based on traditional or no-evidence grounds. *Id*. However, when a motion seeks summary judgment on traditional and no-evidence grounds and both parties present summary judgment evidence, the difference in summary judgment burdens is immaterial, and the ultimate issue is whether a fact issue exists. *Id*. "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a surmise or suspicion of a fact. *Id*.

*Material Fact Issue as to Common Law Marriage*

In Texas, an informal or common law marriage exists if the parties (1) agreed to be married, (2) lived together in Texas as spouses after the agreement, and (3) represented to others in Texas that they were married. TEX. FAM. CODE § 2.401(a)(2); *Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993); *see Obergefell v. Hodges*, 135 S.Ct. 2584, 2607 (2015) (holding same-sex couples may exercise the fundamental right to marry in all states). A common law marriage cannot exist until the concurrence of all three of these elements. *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex.

App.—Houston [14th Dist.] 2011, pet. denied); *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App.— San Antonio 1987, no writ).

The third statutory element, representing marriage to others in Texas, is the same as the judicial requirement of "holding out to the public." *Small*, 352 S.W.3d at 284-85; *In re Estate of Giessel*, 734 S.W.2d 27, 30 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). The "holding out to the public" element may be established by evidence of the conduct and actions of the parties. *Small*, 352 S.W.3d at 285. "The third element of [common law] marriage requires *both* parties to have represented themselves to be married." *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.— Dallas 2009, no pet.) (emphasis added). "[I]solated references to each other as [spouses] alone do not establish a holding out." *Danna v. Danna*, No. 05-05-00472-CV, 2006 WL 785621, at *1 (Tex. App.—Dallas March 29, 2006, no pet.); *see Ex parte Threet*, 333 S.W.2d 361, 364 (Tex. 1960) (concluding evidence that couple was introduced as married to a few friends was no evidence that they held themselves out as married). "Proving a reputation for being married requires evidence that the couple consistently conducted themselves as [spouses] in the public eye or that the community viewed them as married." *Small*, 352 S.W.3d at 285 (internal quotations omitted). "[T]he jurisprudence of Texas strictly construes the holding out element and has held that marriage is more than a contract; it is a 'status' in the community, a general reputation, a public and open holding out that the parties are [spouses]." *Van Hooff v. Anderson*, No. 07-14-00080-CV, 2016 WL 193172, at *6 (Tex. App.—Amarillo Jan. 14, 2016, no pet.).

We begin by reviewing the evidence on the third element of common law marriage, representing to others in Texas that they were married or "holding out to the public." Tavitas argued in his summary judgment response that certain documents and photographs, which Tavitas submitted in response to requests for production and attached to his summary judgment motion, raised a fact issue as to whether he and the decedent represented to others in Texas that they were

married. Specifically, Tavitas claimed the following evidence raised a fact issue as to this element: (1) three business cards; (2) business-related invoices directed to "Gabriel/Gilbert" and "Gabriel/Gilbert/Roxanne;" (3) an overdraft notice from a bank to "Gilbert R. Campos" and "Gabriel Tavitas;" (4) a bank statement addressed to "Gilbert R. Campos" and "Gabriel Tavitas;" (5) a letter from the Social Security Administration addressed to "Gilbert Campos for Gabriel Tavitas;" (6) handwritten correspondence, primarily cards and notes, addressed to Tavitas and the decedent; (7) a document signed by "Gilbert Tavitas" after the decedent's death which stated Tavitas's relationship to the decedent was "husband;" and (8) photographs of Tavitas and the decedent.

This evidence is insufficient to raise a fact issue as to the third element of common law marriage. The business cards are for businesses Tavitas and the decedent operated together, "Vangie's Flower Shop" and "The Flower Box." The names of one or both businesses are printed on each of the business cards. Also printed on the business cards are the words, "Gabriel and Gilbert Campos." The business cards do not contain any references to Tavitas and the decedent as spouses. But even if we were to construe the business cards as indicating that Tavitas used the decedent's surname, the mere use of a common surname does not raise a fact issue as to the third element of common law marriage. *See Danna*, 2006 WL 785621, at *2 (concluding evidence failed to raise a fact issue on "holding out to the public" when documents were executed by "Phillip Danna" and "Alicia Danna," but did not reference Phillip and Alicia as spouses). The evidence does not show that the business cards were ever distributed to anyone, but even if we assume that they were distributed to others, we conclude the business cards are no evidence of the "holding out to the public" element.

The business-related invoices—which are addressed to Tavitas, the decedent and, in some instances "Roxanne"—indicate only that Tavitas and the decedent operated a business. Again, the

invoices contain no references to Tavitas and the decedent as married. Similarly, the bank statement shows that Tavitas and the decedent had a joint bank account, but the bank statement does not refer to Tavitas and the decedent as spouses. The Social Security Administration's letter directed to "Gilbert Campos for Gabriel Tavitas" merely indicates the decedent was designated to receive information concerning Tavitas's social security benefits. Again, nothing in the letter indicates that Tavitas and the decedent were spouses. We conclude the invoices, bank statement, and letter are no evidence of the "holding out to the public" element.

The handwritten correspondence consists of notes from various individuals thanking Tavitas and the decedent for floral arrangements provided by their flower shops, and cards from family members and others expressing holiday greetings. Much of the correspondence is addressed to both Tavitas and the decedent; however, it contains no references to Tavitas and the decedent as spouses. We conclude the correspondence is no evidence of the "holding out to the public" element.

Tavitas produced three photographs which depict Tavitas and the decedent standing together next to a Christmas tree and which appear to have been taken on the same day. These photographs do not demonstrate that Tavitas and the decedent were spouses. We conclude the photographs are no evidence of the "holding out to the public" element

Tavitas produced only one document showing that he ever referred to himself as the decedent's "husband." The document concerns funeral arrangements and was signed after the decedent's death. Tavitas signed the document as "Gabriel Tavitas." An isolated reference to the other person as one's spouse does not raise a fact issue as to the holding out to the public element. *See Deneve*, 285 S.W.3d at 910 (concluding contracts listing parties as "husband" and "wife" were insufficient to raise a fact issue as to the holding out to the public element, when there was no evidence the other party caused the representations to be made or was even aware of them); *Danna*,

2006 WL 785621, at *2 (concluding that evidence of a Valentine card that read "For My Wife" and an AARP enrollment form naming putative wife as "spouse" was no more than a scintilla of evidence and did not raise a fact issue on the element of holding out in Texas). "The element of holding out requires more than occasional references to each other as "wife" and "husband." *Deneve*, 285 S.W.3d at 910. We conclude the document in which Tavitas refers to himself as the decedent's "husband" is no more than a scintilla of evidence of the "holding out to the public" element.

The "holding out to the public" element of common law marriage requires evidence that "both parties" "represented themselves to be married." *Deneve*, 285 S.W.3d at 910; *see also Kuester v. Green*, No. 03-13-00704-CV, 2015 WL 4998171, at *5 (Tex. App.—Austin Aug. 20, 2015, no pet.) (holding common law marriage proponent failed to produce sufficient evidence to raise a fact issue as to "holding out to the public" when she produced emails showing that she and one other person referred to the other party as her "husband," but produced no evidence that the other party ever referred to her as his "wife"); *Lee v. Lee*, 981 S.W.2d 903, 907 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("The evidence offered to support the holding out element was holding out by Viki only, not by Andy…. [This evidence] constituted no evidence that Viki *and* Andy were holding themselves out to the public as man and wife."). Here, Tavitas produced no evidence showing that the decedent ever referred to Tavitas as his "husband."[7]

---

[7]Although not mentioned in the argument section of his summary judgment response or in his appellate brief, we note that Tavitas's affidavit, which was attached to his summary judgment response, contained testimony that Tavitas and the decedent "held ourselves as partners" and "[a]ll of our friends knew that we were husbands and held each other as such." We conclude Tavitas's affidavit is no evidence of the "holding out to the public" element of common law marriage. Tavitas's affidavit does not specify to whom or how frequently he and the decedent held themselves out as partners, does not provide any facts explaining how their friends "knew" that he and the decedent were married, and merely tracks the language of this element without stating the factual bases for the statements. *See Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.) (concluding proponent of common law marriage presented no evidence of holding out to the public element when the evidence failed to indicate whether it was common or rare for the parties to introduce themselves to others as married); *Nichols v. Lightle*, 153 S.W.3d 563, 570-71 (Tex. App.—Amarillo 2004, pet. denied) (holding that affidavits were conclusory and insufficient to raise a fact issue on the third

Even when we consider the evidence in the light most favorable to Tavitas and indulge every reasonable inference in Tavitas's favor, the summary judgment evidence fails to raise a genuine issue of material fact as to the third element of common law marriage. No evidence was produced that either Tavitas or the decedent introduced themselves to others as married or referred to themselves as married while the decedent was alive. No evidence was produced of any other conduct or action by Tavitas and the decedent showing that they held themselves out to the public as married. No evidence was produced that Tavitas and the decedent had a reputation for being married in the community at large. Therefore, we conclude Tavitas failed to produce sufficient evidence to raise a material fact issue on the "holding out to the public" element of common law marriage.

Because Tavitas failed to produce more than a scintilla of evidence to raise a material fact issue as to at least one of the essential elements of common law marriage, the probate court properly granted summary judgment in favor of Campos and denied Tavitas's heirship application. We overrule Tavitas's second issue.

## CONCLUSION

The probate court's judgment is affirmed.

Irene Rios, Justice

---

element of common law marriage when they simply paraphrased the statutory language and contained no specific factual bases for the statements).