Opinion by Justice Boatright
Appellee S & S Emergency Training Solutions, Inc. d/b/a Emergency Medical Training Services ("EMTS") sued appellant Sheila Elliott for breach of contract. Elliott moved to dismiss EMTS's suit under the Texas Citizens Participation Act ("TCPA"). In a single issue, Elliott contends the trial court erred by denying her motion.
We reverse the trial court's denial of the motion to dismiss. We remand the case to the trial court to determine the amounts to be awarded Elliott under the TCPA, and to order dismissal of the suit with prejudice. In a separate order, we deny EMTS's motion to lift stay.
BACKGROUND
On July 24, 2014, EMTS and Arlington Career Institute ("ACI") entered into a written agreement creating the EMTS/ACI Paramedic Education Consortium ("Consortium"). The purpose of that agreement ("Consortium Agreement") was to create an entity that could sponsor a paramedic education program in accordance with the Standards and Guidelines for the Accreditation of Educational Programs in the Emergency Medical Services Professions ("Guidelines") of the Commission on Accreditation of Allied Health Education Programs ("CAAHEP"). EMTS could not offer an accredited paramedic education program that met CAAHEP's standards without a consortium sponsor.
Elliott and the Consortium entered into two nondisclosure agreements ("NDAs"), dated August 20, 2014, and November 6, 2015, respectively. EMTS sued Elliott for breach of the NDAs, alleging that she disclosed confidential information in the following communications:
• a complaint to the Texas Department of State Health Services on December 11, 2015, with copies sent to the Committee on Accreditation of Educational Programs for the Emergency Medical Services Professions and the National Registry of Emergency Technicians;
*573 • a complaint to the Texas Department of State Health Services on May 15, 2016;
• a complaint to the Accrediting Commission on Career Schools and Colleges ("ACCSC") on June 30, 2016; and
• Facebook postings on June 29, 2016.
EMTS also sought and obtained an ex parte temporary restraining order and a temporary injunction prohibiting Elliot's use, disclosure, or communication of "EMTS and/or the Consortium's" confidential information. Elliott then filed two motions to dismiss EMTS's suit, one under the TCPA, and another Texas Rule of Civil Procedure 91a.
After a hearing, the trial court denied both of Elliott's motions to dismiss. She appeals only the denial of her TCPA motion. In this Court, EMTS has filed a "Motion to Lift Stay to File Motion for Contempt and Sanctions and Motion to Seal Court Records." The parties addressed the merits of this motion at oral argument in response to this Court's request.
APPLICABLE LAW AND STANDARD OF REVIEW
The TCPA allows a party to file a motion to dismiss a legal action that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE § 27.003(a) (West 2015). The court may not dismiss an action if the nonmovant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." Id. § 27.005(c). But even if the nonmovant satisfies that requirement, the court must dismiss the legal action if the movant establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim. Id. § 27.005(d). We review de novo the trial court's determination of whether a party met its burden of proof under section 27.005. Campbell v. Clark , 471 S.W.3d 615, 623 (Tex. App.-Dallas 2015, no pet.). We also review de novo questions of statutory construction. Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc. , 402 S.W.3d 299, 304-05 (Tex. App.-Dallas 2013, pet. denied).
DISCUSSION
A. Step One: Elliott's Burden
We apply a two-step process in reviewing the trial court's order regarding a TCPA motion. In re Lipsky , 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). Under the first step, we determine whether Elliott showed by a preponderance of the evidence that EMTS's claim is based on, relates to, or responds to her exercise of the rights of free speech, petition, or association. Id. According to the TCPA, the exercise of the right of free speech "means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A "matter of public concern" includes "an issue related to health or safety." Id. § 27.001(7)(A). EMTS alleges in its petition that it "provides training to first responders so that they can become certified and/or licensed paramedics," and the record reflects that Elliott's communications addressed alleged deficiencies in the certification process.[1]
*574 Because Elliott's communications were about an issue related to health and safety, they were about a matter of public concern, and they were an exercise of the TCPA right to free speech. EMTS's breach of contract claim is about these communications. Consequently, Elliott has shown by a preponderance of the evidence that EMTS's claim is based on, relates to, or responds to her exercise of a TCPA right. She satisfied her burden in the first step of our TCPA analysis.
EMTS argues, however, that Elliott gave up her TCPA rights when she signed the NDAs. In support of its argument, EMTS cites an opinion of the Massachusetts Supreme Judicial Court, Duracraft Corp. v. Holmes Products Corp. , 427 Mass. 156, 691 N.E.2d 935 (1998). The Massachusetts law at issue in Duracraft requires that the "movant who asserts protection for its petitioning activities would have to make a threshold showing through the pleadings and affidavits that the claims against it are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Id. at 943 (internal notations omitted). The court held that the nonmovant's claims were based on the movant's alleged breach of a nondisclosure agreement, not just the movant's petitioning activities, so the motion to dismiss had to fail. Id. at 943-44. The threshold step under the TCPA, however, does not have a "petitioning activities alone" requirement or a "no substantial basis other than the petitioning activities" limitation. TEX. CIV. PRAC. & REM. CODE § 27.005(b) ; Lipsky , 460 S.W.3d at 586-87. See also Jones v. Del Andersen & Assocs. , 539 S.W.2d 348, 350 (Tex. 1976) (an appellate court cannot "read into the statute words which are not there"). In Texas, the movant has to show at the threshold merely that it exercised a statutory right under the TCPA. Lipsky , 460 S.W.3d at 586.
EMTS argues that "it would be irresponsible to ignore Elliott's voluntary contract limiting her First Amendment rights when making the initial assessment required under the TCPA's first step." In support of its argument, EMTS quotes the Massachusetts court's observation that "preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning." Duracraft , 691 N.E.2d at 943. EMTS also notes that we have made similar pronouncements in the past, see, e.g. , Leibovitz v. Sequoia Real Estate Holdings, L.P. , 465 S.W.3d 331, 353 (Tex. App.-Dallas 2015, no pet.), but this does not mean that the first step of a TCPA analysis would require consideration of whether a movant's contract limited her rights. We are bound by the text of the TCPA and the holding of the Texas Supreme Court in Lipsky , which allow us to consider the NDAs in the second step of our TCPA analysis, not the first.
B. Step Two: EMTS's Burden
In the second step of our TCPA inquiry, we determine whether EMTS established by clear and specific evidence a prima facie case for each essential element of its breach of contract claim. Lipsky , 460 S.W.3d at 587. In this step, we consider the pleadings and any supporting and opposing affidavits. Id. EMTS must provide enough detail to show the factual basis for its claim. Id. at 591. A prima facie case is evidence sufficient as a matter of law to establish a given fact if it is not rebutted *575 or contradicted. Id. at 590. It is the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. Id.
EMTS sued Elliott for breach of contract, the essential elements of which are 1) existence of a valid contract, 2) performance by the plaintiff, 3) breach by the defendant, and 4) damages from the breach. Petras v. Criswell , 248 S.W.3d 471, 477 (Tex. App.-Dallas 2008, no pet.). We begin our analysis by determining whether EMTS established by clear and specific evidence that there was a valid contract between Elliott and EMTS.
1. Existence of a valid contract
To form a valid contract, there must be 1) an offer, 2) acceptance in strict compliance with the terms of the offer, 3) a meeting of the minds, 4) each party's consent to the terms, and 5) execution and delivery of the contract with the intent that it be mutual and binding. Sharifi v. Steen Automotive, LLC , 370 S.W.3d 126, 140-41 (Tex. App.-Dallas 2012, no pet.).
a. Offer, Acceptance, and a Meeting of the Minds
The first three elements of contract formation are related. The meeting of the minds requirement ensures that the offer and acceptance are mutual. Domingo v. Mitchell , 257 S.W.3d 34, 40 (Tex. App.-Amarillo 2008, pet. denied). The determination of whether there was a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not their subjective state of mind. Angelou v. African Overseas Union , 33 S.W.3d 269, 278 (Tex. App.-Houston [14th Dist.] 2000, no pet.). A meeting of the minds is a mutual understanding and assent to the expression of the parties' agreement. Domingo , 257 S.W.3d at 40. In determining mutual assent, the court considers the communications between the parties and the acts and circumstances surrounding those communications. Wal-Mart Stores, Inc. v. Lopez , 93 S.W.3d 548, 556 (Tex. App.-Houston [14th Dist.] 2002, no pet.).
EMTS argues there was a valid contract, relying on the two NDAs and two affidavits of Thomas Cellio II, dated August 5, 2016 ("Cellio TRO affidavit"), and October 13, 2016 ("Cellio TCPA affidavit"). Both NDAs state that Elliott has been appointed to the Paramedic Advisory Committee ("Committee") of the Consortium. The Consortium Agreement created the Consortium in accordance with CAAHEP's Guidelines. Both the Consortium Agreement and the Guidelines required the Consortium to "designate" the Committee.
Elliott signed the first NDA for the express purpose of accepting her appointment to the Committee. Below her signature, she is identified as "Program Director and Faculty." The Consortium Agreement and the Guidelines require the Consortium to appoint the Program Director of the educational program. The Consortium was the sponsor of the educational program of which Elliott was faculty. The second NDA expressly provides that it is an "Advisory Committee Appointment/Acceptance." It shows that Elliott was appointed to the Committee as Program Director on the same day she executed the document, which she signed as "Committee Member." The other two signatories to both NDAs are Thomas A. Cellio II, as Consortium Vice Chair, EMTS Managing Director; and Jon Vecchio as Consortium Chair, ACI CEO/Director. The Consortium's name is at the middle of the top of both NDAs. EMTS's logo and name are to the left of the Consortium's name, and ACI's logo and name are to the right.
*576 The NDAs state that "Committee member" acknowledges she will see information "owned or licensed by the Consortium in connection with the operation of its business including, without limitation, the Consortium's business and product processes, methods, and procedures." The NDAs provide that all "files, records, documents, specifications, information, letters, notes, notebooks, and similar items ... shall remain the exclusive property of the Consortium." They also provide that "Committee member" cannot retain copies of the Consortium's information without the "Consortium's prior written permission." And they require that, "whenever requested by the Consortium, the Committee member shall immediately deliver to the Consortium all "records and other items in her possession or under her control."
Thus, there is clear and specific evidence in the NDAs that Elliott was offered an appointment to the Consortium Committee and access to Consortium records and information, and that she accepted the conditions of the appointment and access. We will now discuss whether there is sufficient evidence of mutual understanding and assent.
Cellio's TCPA affidavit claims that the NDAs "refer to such materials as belong[ing] respectively to ACI, to EMTS, or to both, and relate to their sponsorship and association to offer paramedic education courses," and that the NDAs "were intended to protect and do protect the confidentiality of materials belonging to and in possession of ACI and EMTS." In the same affidavit, Cellio asserts that "there is no 'Consortium' entity, and that phrase is instead a term of convenience that refers to ACI and EMTS's cooperative activities in the field of emergency medical education." The affidavit also claims that "the phrase 'the Consortium' in the Consortium Agreement and related documents does not refer to any corporation, partnership, LLC, or any other artificial legal entity within Texas or without...." EMTS does not provide any explanation, evidence, or legal authority to support those claims. Bare opinion in an affidavit is not a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA. Lipsky , 460 S.W.3d at 592. The Cellio affidavit claims are not, therefore, evidence that would support EMTS's prima facie case.
EMTS also argues that its logo and name at the top of the NDAs, and its name in the Cellio signature block at their left, are evidence that EMTS was a party to the NDAs. This court has previously determined that a corporation was a party to a contract, and was entitled to enforce it, when the corporation's name was at the top of the contract and the individual signatory was identified as a principal of the corporation under the signature line. Wright Grp. Architects-Planners, P.L.L.C. v. Pierce , 343 S.W.3d 196, 201 (Tex. App.-Dallas 2011, no pet.). Accordingly, we conclude that EMTS's logo and name at the top of the contract, and its name in the signature block, are evidence of a mutual understanding that EMTS was a party to the contract.
b. Consent and Mutuality of Obligation
The parties' signatures are strong evidence that the NDAs satisfied the fourth element of contract formation, consent to the terms of the NDAs. In re Bunzl USA, Inc. , 155 S.W.3d 202, 209 (Tex. App.-El Paso 2004, orig. proceeding). This leaves only the fifth element for our consideration, whether the NDAs were intended to be mutually binding.
*577 A contract must be based upon mutuality of obligation. Fed. Sign v. Tex. S. Univ. , 951 S.W.2d 401, 408 (Tex. 1997), superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little-Tex Insulation Co. , 39 S.W.3d 591, 593 (Tex. 2001). Mutuality of obligation is simply a valid consideration, a bargained-for exchange of promises. Id. Contracts are construed in favor of mutuality. Tex. Gas Utils. Co. v. Barrett , 460 S.W.2d 409, 412 (Tex. 1970).
Cellio's TCPA affidavit claims that Elliott "willingly executed the NDAs in consideration of her position as Program Director, and in order to receive access to the confidential information that was necessary to perform her job requirements with EMTS."
Some evidence supports Cellio's affidavit testimony. In a December 7, 2015 letter to Cellio, Elliott explains that she deserves a raise from EMTS because of her extensive duties with the Consortium. She does not say anything about confidential information, but the NDAs show that a condition of her appointment to the Committee was that she would protect the Consortium's confidential information. Elliott's statement appears to be circumstantial evidence that she executed the NDAs to access confidential information that was necessary to do her job with EMTS. In determining whether EMTS has made a prima facie case, we may consider circumstantial evidence. Lipsky , 460 S.W.3d at 590. Accordingly, we conclude that EMTS has presented the minimum quantum of evidence to permit a rational inference that there was a valid consideration for the NDAs. Thus, EMTS has established, by clear and specific evidence, a prima facie case that there was a valid contract between EMTS and Elliott. We turn now to the other elements of a breach of contract claim.
2. Performance
The record reflects that Elliott was appointed to the Committee and had access to confidential information necessary to perform her duties as Program Director. Therefore, EMTS has offered clear and specific evidence of performance of the contract by both parties. See Petras , 248 S.W.3d at 480 (discussing evidence of performance in a breach of contract claim).
3. Breach
In Cellio's affidavits, and in Vecchio's affidavits of July 25, 2016 and October 13, 2016, EMTS alleges that Elliott breached the NDAs in several ways, summarized here:
• Elliott disclosed "information about EMTS's business" and its "business processes, methods, [and] procedures" when she reported to the Department of State Health Services ("DSHS") that EMTS had "released" students to take a test who "still had deficiencies in hours and skills that had not been addressed";
• Elliott disclosed "information related to the business of EMTS and the Consortium" when she reported to DSHS that EMTS did not dismiss students who had failed exams "as they should have been, per EMTS policies and guidelines";
• Elliott disclosed "EMTS's business process for issuing student transcripts," student names and contact information, a student transcript, and a printout of the "Enrollware Admin page" containing student names and contact information when she reported to DSHS that EMTS created and sold a transcript to a former student, and then lied about it to regulatory authorities;
• Elliott disclosed "ACI and EMTS's financial information"; their "discussions *578 regarding their process and method for issuing student transcripts"; information about a specific student's transcript; and an Enrollware page containing a list of student names and contact information when she reported to the ACCSC that EMTS and ACI misrepresented the college credit hours available through the program, and detailed the consequences regarding one student; and
• Elliott disclosed a student name and "information surrounding the issuance of his transcript" on Facebook.
Documents supporting these allegations were identified in and attached to Cellio's and Vecchio's affidavits, and are included in the record. Therefore, EMTS has offered clear and specific evidence of breach, the third element of its breach of contract claim. See id. at 479 (discussing evidence of breach in a breach of contract claim).
4. Causation and Damages
To recover damages in an action for breach of contract, a plaintiff must show that it suffered a pecuniary loss as a result of the breach. Stewart v. Basey , 150 Tex. 666, 245 S.W.2d 484, 486 (1952). Actual "damages may be recovered when loss is the natural, probable, and foreseeable consequence of the defendant's conduct." Mead v. Johnson Grp., Inc. , 615 S.W.2d 685, 687 (Tex. 1981). A plaintiff may not recover damages for breach of contract if they are remote, contingent, speculative, or conjectural. City of Dallas v. Vills. Of Forest Hills, L.P., Phase I , 931 S.W.2d 601, 605 (Tex. App.-Dallas 1996, no writ).
a. Damages from Regulatory Compliance
EMTS alleges that Elliott's disclosures placed EMTS under the intense scrutiny of regulatory entities and accrediting bodies, forcing EMTS "to expend significant time, effort, and money to respond appropriately...." EMTS also alleges that this scrutiny forced EMTS "to spend considerable time and resources responding" to Elliott's communications.
EMTS does not reveal the amount of money it spent responding to these inquiries. Nor does it attempt to explain how that expenditure was the natural, probable, and foreseeable consequence of Elliott's conduct. EMTS has simply alleged that it spent a "significant amount" of money and "considerable time and resources." EMTS cites no legal authority which would allow us to conclude that this allegation could be clear and specific evidence of damages in an action for breach of contract.
Instead, EMTS argues that assigning a dollar amount to intangibles such as loss of clientele and goodwill "is not easy," citing our opinion in Daugherty v. Highland Capital Management, L.P. , No. 05-14-01215-CV, 2016 WL 4446158, at *8 (Tex. App.-Dallas Aug. 22, 2016, no pet.) (mem. op.). Our comment in that case, however, was about establishing the element of irreparable injury to obtain a permanent injunction. See id. at *5-8. Here, EMTS in its brief relies only on its request for damages to argue it provided clear and specific evidence of its breach of contract claim.
EMTS also cites Moldovan v. Polito , No. 05-15-01052-CV, 2016 WL 4131890, at *15 (Tex. App.-Dallas Aug. 2, 2016, no pet.) (mem. op.), where we held that "the lack of expert testimony on damages is not fatal to [the nonmovant's] prima facie case" under the TCPA. In Moldovan , a wedding photographer sued a former customer for publishing disparaging comments about the photographer. The former customer sought to dismiss the photographer's suit under the TCPA. The trial court denied the customer's *579 TCPA motion. But in support of her prima facie case, the photographer offered evidence of the specific numbers of weddings she covered in the years before, and then after, the publication of the disparaging statements. She also offered proof of her sales and income before the statements, and testified to her earnings after the statements were made. And she offered evidence that she was required to loan her company $40,000 of her personal funds "to keep it from going under." Id. at *10, 15. EMTS offered nothing similar. For example, it did not estimate the number of hours spent responding to inquiries from regulators and accreditors or identify any personnel diverted to the task or offer even a general description of other business neglected in preparing its responses. Nor did EMTS offer any evidence regarding the amount of money it spent doing those things. EMTS presented no demonstrable facts supporting its allegations of damages. Conclusory allegations unsupported by "demonstrable facts" are not the clear and specific evidence required to establish a prima facie case under the TCPA. Lipsky , 460 S.W.3d at 592.
b. Damages from Loss of Business
EMTS also claims damages from lost business. It alleges that Elliott's communications "prevented EMTS from enrolling new paramedic training classes in its paramedic training courses. EMTS has lost hundreds of thousands of dollars in revenue because of that loss and the losses continue to mount." Similarly, EMTS contends that "it can no longer offer paramedic training courses to new students," and "has lost the interest of potential students ...."
EMTS offers no evidence regarding how many students were enrolled in the training courses before Elliott's disclosures, how much those students paid in tuition to EMTS, EMTS's past profits, estimates of expected future enrollment and tuition, or any other evidence similar to the financial information offered by the plaintiff in Moldovan . Again, EMTS does not point to any "demonstrable facts" as the basis for its claim; instead, it relies only on conclusory statements. See Lipsky , 460 S.W.3d at 593 (opinions must be based on "demonstrable facts and a reasoned basis"). "Bare, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." Lipsky , 460 S.W.3d at 592.
In Lipsky , the nonmovant supported its business disparagement claim with evidence that it suffered "direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill in the communities in which it operates ... in excess of three million dollars." Lipsky , 460 S.W.3d at 592. The court concluded that this testimony was not clear and specific evidence of damages, because "[g]eneral averments of direct economic losses and lost profits, without more," are insufficient to "satisfy the minimum requirements of the TCPA." Id. at 593. The testimony was "devoid of any specific facts illustrating how Lipsky's alleged remarks ... actually caused such losses." Id. EMTS's general averment of "hundreds of thousands of dollars" in lost revenue is as conclusory and unsupported by fact as the allegation of damages that was deficient in Lipsky .
EMTS did not support its allegations of damages with demonstrable facts, and it did not attempt to explain how any damages might have been the natural, probable, and foreseeable result of Elliott's disclosures. An award of damages would have to be based entirely on conjecture and speculation. Therefore, EMTS has not offered clear and specific evidence of causation and damages.
Because EMTS did not meet its burden under the TCPA to establish, by clear and *580 specific evidence, a prima facie case for each essential element of its breach of contract claim, Elliott's motion to dismiss should have been granted. We sustain her sole issue.
CONCLUSION
We reverse the trial court's denial of Elliott's motion to dismiss. As the successful movant for dismissal, Elliott is entitled to amounts to be determined by the trial court pursuant to section 27.009(a). Avila v. Larrea , 506 S.W.3d 490, 497 (Tex. App.-Dallas 2015, pet. denied). We remand the case to the trial court to determine the amount of this award and to order dismissal of the suit with prejudice. In a separate order, we deny EMTS's motion to lift stay as moot.

Where possible, we avoid detailing the alleged deficiencies in light of the concerns EMTS has expressed about confidentiality. EMTS designated its appellate brief as "filed under seal," and in a separate motion seeks to set aside the stay of proceedings in the trial court in order to file a motion to seal the trial court's records. We will attempt to "strike a fair balance" between the parties' confidentiality interest and fulfilling our responsibilities as a court of record. See Kartsotis v. Bloch , 503 S.W.3d 506, 510 (Tex. App.-Dallas 2016, pet. denied) (where possible, court would avoid reference to materials the parties intended to be confidential).