

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00440-CV

MESQUITE SERVICES, LLC, BLACK WATER RENTALS, LLC, AYRIC WRIGHT, INDIVIDUALLY, AND GENE HORNBECK, INDIVIDUALLY, APPELLANTS

V.

STANDARD E&S, LLC D/B/A STANDARD ENERGY SERVICES, APPELLEE

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2019-536,645, Honorable William C. Sowder, Presiding

September 15, 2020

## OPINION

Before QUINN, C.J., and PARKER and HATCH,[1] JJ.

Appellants, Mesquite Services, LLC, Blackwater Rentals, LLC, Ayric Wright, and Gene Hornbeck, filed this interlocutory appeal of the trial court's order denying, by operation of law, appellants' motions to dismiss claims asserted by appellee, Standard E&S, LLC d/b/a Standard Energy Services. We affirm in part and reverse in part.

---

[1] Honorable Les Hatch, Judge, 237th District Court, sitting by assignment.

Factual and Procedural Background

Mesquite and Standard are both oilfield services businesses operating in the Permian Basin and Eastern New Mexico. Both companies haul water from oil and gas leases and dispose of the water in disposal wells. Blackwater operates an equipment rental business. Wright is the president and CEO of both Mesquite and Blackwater. Hornbeck is the Health, Safety, and Environment (HSE) Director for Mesquite. Hornbeck previously worked for Standard as an Operations Manager for approximately a year and a half. Prior to Hornbeck's employment with Standard, he signed a work agreement that contains a covenant not to compete, clauses prohibiting the solicitation of Standard's customers and employees, and a confidentiality agreement.

Several months after Hornbeck began working for Mesquite, Standard sent a demand letter to Mesquite and Blackwater advising them that former employees of Standard are subject to a work agreement that includes a covenant not to compete and making the accusation that certain employees had begun working for Mesquite and Blackwater in violation of the terms of the work agreement. Wright met with a representative of Standard and the parties agreed to actions that would comply with the work agreements. However, a few months after the meeting, Standard filed suit asserting causes of action for defamation, trade secret misappropriation, tortious interference with existing contract, tortious interference with prospective business relations, conversion, liability for civil theft, breach of contract, quantum meruit, breach of fiduciary duty, and conspiracy.[2] Standard also sought injunctive relief. These claims were based on

---

[2] Other former employees were named in Standard's original petition, but these parties were subsequently nonsuited and are not parties to this appeal.

Standard's allegations that Mesquite and Blackwater conspired to harm Standard by disparaging its reputation and stealing its confidential and proprietary information, contractually bound employees, customers, and revenues. Mesquite answered and asserted a counterclaim for violations of the Texas Uniform Trade Secrets Act. Hornbeck answered and asserted counterclaims for breach of contract, negligent misrepresentation, common law fraud, and defamation. Wright and Blackwater answered. Standard subsequently filed an amended petition that limited its claims to breach of contract, trade secret misappropriation, tortious interference with existing contract, conspiracy, and promissory estoppel.

Appellants filed motions to dismiss Standard's claims pursuant to provisions of the Texas Citizens Participation Act (TCPA). They attached evidence to their motions, including the affidavits of Hornbeck and Wright. Standard responded and attached work agreements that had been signed by former Standard employees as well as affidavits from current Standard employees and Vincent D'Alise, Standard's Vice President of Business Development. Appellants filed a reply with additional affidavits attached.

The trial court held a hearing on appellants' motion on November 15, 2019. The parties presented their arguments and the trial court considered the pleadings, including the motion to dismiss and Standard's response to the motion, as well as the affidavits attached to the pleadings. The trial court denied appellants' motion to dismiss.[3]

---

[3] The trial court's denial of the motion to dismiss was not filed until January 14, 2020, which was more than thirty days after the hearing on the motion was held. Consequently, the motion was overruled by operation of law on December 14, 2019. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(a) (West 2020).

Appellants timely filed the instant interlocutory appeal challenging the trial court's failure to dismiss Standard's claims.

By their appeal, appellants present one issue: did the trial court err in denying appellants' motion to dismiss filed under the TCPA? Specifically, appellants contend that the legal actions asserted by Standard are covered by the TCPA because they are based on, relate to, or were in response to a party's exercise of the rights of free speech or association. Appellants further assert that Standard failed to establish by clear and specific evidence a prima facie case for each element of Standard's claims. Appellants also contend that the commercial speech exemption in the TCPA does not apply to Standard's claims. Finally, appellants contend that the case should be remanded to the trial court for it to impose sanctions against Standard and award appellants court costs, reasonable attorney's fees, and other expenses incurred in defending against Standard's claims.

## The Texas Citizens Participation Act (TCPA)

Our review of a ruling on a motion to dismiss filed under the TCPA must start with examining the scope of the Act as expressed by its language. The TCPA is popularly known as the Texas Anti-SLAPP statute, which is designed to prevent strategic lawsuits against public participation. *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 571 (Tex. App.—Fort Worth 2019, pet. denied). The express purpose of the TCPA is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for

demonstrable injuries. TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2020);[4] *see In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding) (TCPA provides process to summarily dispose of lawsuits designed with the sole purpose of chilling First Amendment rights). To meet these purposes, the legislature codified a set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of claims that are deemed to implicate the expressive interests protected by the statute. *Kawcak*, 582 S.W.3d at 572 (citing *Serafine v. Blunt*, 466 S.W.3d 352, 369 (Tex. App.—Austin 2015, no pet.) (op. on reh'g) (Pemberton, J., concurring)).

The TCPA's procedural mechanism consists of a burden of proof that zig-zags as follows:

> Once a motion to dismiss is filed, a burden-shifting mechanism goes into effect. [*In re Lipsky*, 460 S.W.3d at 586-87.] First, a defendant moving for dismissal has the burden to show by a preponderance of the evidence that the plaintiff filed a "legal action" that is "based on, relates to, or is in response to" the defendant's exercise of the right of free speech, the right to petition, or the right of association. [] §§ 27.003(a) (West 2020),[5] 27.005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018).
>
> Second, if the defendant satisfies that burden, to avoid dismissal, a plaintiff must establish by clear and specific evidence a prima facie case for each essential element of its claim. [] § 27.005(c). The requirement for "clear and specific evidence" means the plaintiff "must provide enough detail to show the factual basis for its claim." [*In re*] *Lipsky*, 460 S.W.3d at 590-91.
>
> Third, even if the plaintiff establishes a prima facie case, the defendant can still obtain dismissal if he "establishes by a preponderance of the evidence

---

[4] Further reference to provisions of the Texas Civil Practice and Remedies Code will be by reference to "section __" or "§ __."

[5] Amended by Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 2, 2019 Tex. Gen. Laws 684, 685. The amendment, *inter alia*, removed the "relates to" language from the description of legal actions covered by the TCPA. However, the amendment expressly provides that this change in law applies only to a legal action filed on or after the September 1, 2019 effective date of the amendment. *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687. Consequently, further references to section 27.003 will refer to the pre-amended version of the statute.

each essential element of a valid defense to the nonmovant's claim." []
§ 27.005(d).[6]

*Kawcak*, 582 S.W.3d at 572 (quoting *Beving v. Beadles*, 563 S.W.3d 399, 404 (Tex. App.—Fort Worth 2018, pet. denied)).

The TCPA sets deadlines for the filing of a motion to dismiss, hearings on the motion, and the time in which the trial court must rule. §§ 27.003(b), .004 (West 2015), .005(a). The filing of a motion to dismiss suspends discovery unless the trial court orders specific and limited discovery upon the showing of good cause. §§ 27.003(c), .006(b) (West Supp. 2019). In considering a motion to dismiss, the trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." § 27.006(a).[7] If, as here, the trial court does not rule on the motion to dismiss within thirty days after it holds the hearing mandated by section 27.004, the motion is overruled by operation of law. § 27.005(a).

An accelerated interlocutory appeal is permitted from a trial court order denying a motion to dismiss under the TCPA but not from an order granting the motion. *Moricz v. Long*, No. 06-17-00011-CV, 2017 Tex. App. LEXIS 6678, at *8-9 (Tex. App.—Texarkana July 20, 2017, no pet.) (mem. op.) (citing §§ 27.008(a) (West 2015), and 51.014(a)(12)

---

[6] Amended by Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 3, 2019 Tex. Gen. Laws 684, 685. This amendment removed the preponderance of the evidence standard and replaced it with language requiring the movant to "establish[] an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." However, the amendment expressly provides that this change in law applies only to a legal action filed on or after the September 1, 2019 effective date of the amendment. *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687. Consequently, further references to section 27.005 will refer to the pre-amended version of the statute.

[7] Amended by Act of June 2, 2019, 86th Leg., R.S., ch. 378, §§ 4, 5, 2019 Tex. Gen. Laws 684, 685. This amendment added the requirement that a trial court shall consider evidence the court could consider under Texas Rule of Civil Procedure 166a in addition to pleadings and affidavits. However, the amendment expressly provides that this change in law applies only to a legal action filed on or after the September 1, 2019 effective date of the amendment. *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687. Consequently, further references to section 27.006 will refer to the pre-amended version of the statute.

(West Supp. 2019)).  The trial court is statutorily obligated to award the moving party both fees and sanctions "if the court orders dismissal of [the] legal action."  § 27.009(a) (West 2020).[8]

## Application of the TCPA to Standard's Claims

As previously identified, the first step in analyzing a motion to dismiss filed under the TCPA is to determine whether the defendant met its burden to show by a preponderance of the evidence that the plaintiff's legal action is "based on, relates to, or is in response to" the defendant's exercise of the right of free speech, the right to petition, or the right of association.  §§ 27.003(a), 27.005(b); *Kawcak*, 582 S.W.3d at 572.  In their motion to dismiss, appellants asserted that Standard's claims are based on, relate to, or are in response to appellants' exercise of their rights of free speech and association.  As such, we begin our analysis by determining whether appellants met their burden of proving this connection.

We construe the language of the TCPA and review the issue of whether the defendant meets this initial burden de novo.  *Kawcak*, 582 S.W.3d at 571; *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 845 (Tex. App.—Dallas 2015), *rev'd on other grounds*, 512 S.W.3d 895, 901-02 (Tex. 2017) (per curiam).  In interpreting a statute, our primary objective is to give effect to the legislature's intent in enacting the statute.  *City of Houston v. Bates*, 406 S.W.3d 539, 543 (Tex. 2013).  We start by reviewing the text of

---

[8] Amended by Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 8, 2019 Tex. Gen. Laws 684, 686. The amendment makes the award of sanctions discretionary.  However, the amendment expressly provides that this change in law applies only to a legal action filed on or after the September 1, 2019 effective date of the amendment.  *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687.  Consequently, further references to subsection 27.009 will refer to the pre-amended version of the statute.

the statute and presume the legislature intended what it enacted. *In re Elliott*, 504 S.W.3d 455, 464 (Tex. App.—Austin 2016, orig. proceeding). The plain meaning of the text is the best indication of the legislature's intent, unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning would lead to absurd results. *Id.* at 463.

Appellants contend that Standard's claims are based on, relate to, or are in response to appellants' exercise of their rights to free speech and association. Appellants indicate that all of Standard's claims are based on communications by and between Mesquite and Blackwater, their employees, and potential customers that were made to collectively express, promote, pursue, or defend common interests. These communications are matters of public concern because they are about a good, product, or service in the marketplace. We agree with appellants' contention regarding the nature of their associations and communications.

The core of the exercise of both the right of free speech and association is a "communication." *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 197-98 (Tex. App.—Austin 2017, pet. dism'd). The TCPA defines communication to include the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic. § 27.001(1) (West 2020).

The exercise of the right of free speech requires a communication made in connection with a matter of public concern. § 27.001(3). A communication about a "matter of public concern" relates to health or safety; environmental, economic, or community well-being; the government; a public official or figure; or a good, product, or

service in the marketplace.  § 27.001(7);[9] *Coleman*, 512 S.W.3d at 899.  The TCPA does not require that communications specifically "mention" a matter of public concern or have more than a "tangential relationship" to such a matter.  *Coleman*, 512 S.W.3d at 900.  The purpose of the Act, as applicable to this analysis, is "to encourage and safeguard the constitutional rights of persons to . . . speak freely . . . to the maximum extent permitted by law . . . ."  § 27.002.

The TCPA defines the "exercise of the right of association" as people joining "together to collectively express, promote, pursue, or defend common interests." § 27.001(2).[10]  The TCPA does not create a right of association.  Rather, the purpose of the Act is "to encourage and safeguard the constitutional rights of persons to . . . associate freely . . . to the maximum extent permitted by law . . . ."  § 27.002.

While the legislature has taken steps to specifically exclude actions arising from employer-employee relationships that seek recovery for misappropriation of trade secrets or corporate opportunities from being covered by the TCPA, the amendment affecting that policy did not become effective prior to the accrual and filing of Standard's suit.  *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 9, 2019 Tex. Gen. Laws 684, 684.  The

---

[9] Amended by Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 1, 2019 Tex. Gen. Laws 684, 684-85.  The amendment defines a matter of public concern to relate to a "public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; a matter of political, social, or other interest to the community; or a subject of concern to the public."  However, the amendment expressly provides that this change in law applies only to a legal action filed on or after the September 1, 2019 effective date of the amendment.  *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687.  Consequently, further references to subsection 27.001(7) will refer to the pre-amended version of the statute.

[10] Amended by Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 1, 2019 Tex. Gen. Laws 684, 684. The amendment adds to the definition the limitation that the common interest to be defended must relate "to a governmental proceeding or a matter of public concern."  However, the amendment expressly provides that this change in law applies only to a legal action filed on or after the September 1, 2019 effective date of the amendment.  *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687.  Consequently, further references to subsection 27.001(2) will refer to the pre-amended version of the statute.

amendment of a statute does not affect the operation of the prior version. TEX. GOV'T CODE ANN. § 311.031(a)(1) (West 2013).

This Court has previously determined that, under the version of the TCPA applicable to this case, claims like those asserted by Standard are covered because they are based on or related to appellants' exercise of their free speech (based on their discussions with current Standard customers) and association (based on their association with current Standard customers as well as current and past Standard employees) rights. *In re Krause Landscape Contrs., Inc.*, 595 S.W.3d 831, 837 (Tex. App.—Amarillo 2020, no pet.). While the Texas Supreme Court has held that "communications[] with a limited business audience concerning a private contract dispute[] do not relate to a matter of public concern under the TCPA," *Creative Oil & Gas, LLC v. Lone Hills Ranch, LLC*, 591 S.W.3d 127, 133 (Tex. 2019), we believe that Standard's claims are not based on communications with a limited business audience concerning a private contract dispute. Our sister courts have likewise concluded that claims such as those asserted by Standard are covered by the TCPA. *See Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177, 185 (Tex. App.—Tyler 2018, no pet.) (misappropriation of trade secrets claim involves a communication about a common interest and matter of public concern); *Grant v. Pivot Tech. Solutions, Inc.*, 556 S.W.3d 865, 880-81 (Tex. App.—Austin 2018, pet. denied) (allegations of illegal acts designed to steal customers and unfairly compete are "factually predicated" on communications covered by the TCPA); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 Tex. App. LEXIS 4653, at *18-20 (Tex. App.— Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (claims of interference with existing customers and violations of noncompete agreement involve communications made in connection with a matter of public concern and are, therefore, covered under the

10

TCPA).  We have determined that a communication relates to a public concern or common interest when one party is alleged to have used the proprietary information of another in such a manner as to afford it an unfair advantage in the marketplace.  *Tex. Custom Wine Works, LLC v. Talcott*, 598 S.W.3d 380, 388 (Tex. App.—Amarillo 2020, no pet.) (distinguishing our holding from that in *Elite Auto Body, LLC*, 520 S.W.3d at 204-05).  Because Standard's claims are based on communications by and between Mesquite and Blackwater, their employees, and potential customers and these communications relate to matters of public concern, we conclude that the TCPA's dismissal process applies to Standard's claims.

Standard contends that many of its complaints do not involve communications but, rather, involve actions and, as such, are not covered by the TCPA.  However, the specific claims it identifies as not involving communication each directly involve communication or association.  For example, Standard contends that Hornbeck's alleged tortious interference with contract does not implicate the constitutional rights protected by the TCPA.  However, Standard's claim is premised on Hornbeck tortiously interfering with Standard's contract by soliciting one of Standard's existing clients to employ Mesquite.  This implicates Hornbeck's speech and association rights that relate, as addressed above, to a matter of public concern.  All of Standard's claims assert that the "actions" taken by the appellants implicated appellants' rights of free speech and/or association.

Hornbeck's Waiver of TCPA Protection

Standard separately contends that Hornbeck waived his right to claim the protections afforded him by the TCPA by entering into the work agreement with Standard.  While it is true that an individual can waive his constitutional rights by contract, *see D.H.*

11

*Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86, 92 S. Ct. 775, 31 L. Ed. 2d 124 (1972), the purpose of the TCPA is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injuries. § 27.002. Consequently, we believe that the process invoked by the filing of a TCPA motion to dismiss functions only to require the nonmovant to establish by clear and specific evidence its prima facie case for each of its claims. The rights waived by Hornbeck do not include any waiver to challenge the legitimacy of future claims asserted against him by Standard. We conclude that the rights Hornbeck waived by signing the work agreement with Standard did not include a waiver of any statutory right to require Standard to prove the bona fides of any case it subsequently chose to bring against Hornbeck.[11]

Whether a movant contractually limited his constitutional rights is not a consideration under the first step of the TCPA analysis. *Morgan*, 589 S.W.3d at 185; *Elliott v. S&S Emergency Training Solutions, Inc.*, 559 S.W.3d 568, 574 (Tex. App.—Dallas 2017) (mem. op.), *rev'd on other grounds*, 564 S.W.3d 843, 850 (Tex. 2018). To meet the threshold requirement, the movant need only show that he exercised a statutory right under the TCPA. *Morgan*, 589 S.W.3d at 185 (citing *Elliott*, 559 S.W.3d at 574). Because the TCPA requires only that the movant establish that they exercised a statutory

---

[11] We do recognize that the work agreement and its waivers of Hornbeck's rights may be relevant in Standard's effort to present clear and specific evidence of a prima facie case for each essential element of its claims.

right under the TCPA, we do not address Hornbeck's work agreement in determining whether the TCPA covers Standard's claims. *Id.* at 185-86.

Standard's Proof of its Prima Facie Case

Because Standard's claims are based on or related to appellants' exercise of their free speech and association rights, we must now determine whether Standard met its burden to show by clear and specific evidence a prima facie case for "each essential element of the claim in question." § 27.005(c). "In determining whether a legal action should be dismissed . . ., the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." § 27.006(a).

A prima facie showing generally "requires only the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (quoting *Tex. Tech Univ. Health Scis. Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex. App.—El Paso 1994, writ denied)). A prima facie case refers to an amount of evidence sufficient to establish a given fact if it is not rebutted or contradicted. *In re Lipsky*, 460 S.W.3d at 590. Direct evidence of damages is not required, but the evidence must be such as to allow a rational inference that some damages naturally flowed from the defendant's conduct. *See id.* at 591-92.

"Clear and specific evidence" of each essential element of a claim is more than "mere notice pleading." *Id.* at 590. Stated another way, "general allegations that merely recite the elements of a cause of action . . . will not suffice." *Id.* at 590-91. Rather, the nonmovant bears the burden to "provide enough detail to show the factual basis for its

claim." *Id.* at 591. Clear and specific evidence has been described as evidence that is "unaided by presumptions, inferences, or intendments." *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *disapproved on other grounds by*, *In re Lipsky*, 460 S.W.3d at 587-88. Conclusory statements and bare, baseless opinions are not probative and do not meet the requirement of clear and specific evidence. *In re Lipsky*, 460 S.W.3d at 592-93; *see Nichols v. Lightle*, 153 S.W.3d 563, 570-71 (Tex. App.—Amarillo 2004, pet. denied) (an affidavit that does not contain specific factual bases for the affiant's conclusions does not constitute evidence).

We consider evidence favorable to the nonmovant in determining whether the nonmovant met his burden of establishing a prima facie case under the TCPA. *Buckingham Senior Living Cmty., Inc. v. Washington*, No. 01-19-00374-CV, 2020 Tex. App. LEXIS 4230, at *9 (Tex. App.—Houston [1st Dist.] June 4, 2020, no pet. h.); *see West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019) ("[Movant] vigorously disputes many of [nonmovant]'s factual allegations, but at this point we must decide only whether [nonmovant] has established a prima facie case by clear and specific evidence . . . . A finding that [nonmovant] has met his TCPA burden does not establish that his allegations are true."); *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 440 & n.9 (Tex. 2017) (refusing to consider TCPA movant's rebuttal evidence in determining whether nonmovant established prima facie case, stating that although movant "disputes [nonmovant's factual assertion,] . . . at this stage of the proceedings we assume its truth.").

14

Breach of Contract Claim

Standard brought breach of contract claims against appellants. The elements of a breach of contract claim requires the plaintiff to show that (1) a valid contract exists; (2) performance or tendered performance by the plaintiff; (3) defendant breached the contract; and (4) plaintiff suffered damages as a result of plaintiff's breach. *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). Appellants do not dispute that Standard established a prima facie case of the first two elements.

Standard contends that it presented clear and specific evidence of breach by Hornbeck because he went to work for a competitor in a role that is in direct competition with Standard in violation of his noncompete agreement with Standard. According to correspondence between Standard and Mesquite, Standard expressly indicated that it did not view Hornbeck working in a safety position with Mesquite as being in a competitive role. But, after Hornbeck was employed by Mesquite in 2019, Standard discovered Hornbeck's LinkedIn page indicated that he was working as yard manager for Mesquite. Because this is the position Hornbeck held for Standard, his holding the same position for Mesquite would be in direct competition with Standard. Considering the evidence favorable to Standard, we conclude that Standard has provided clear and specific evidence to state a prima facie claim for breach of contract against Hornbeck if this evidence is not rebutted or contradicted.[12] *See In re Lipsky*, 460 S.W.3d at 590.

---

[12] In his affidavit, Wright explains that Hornbeck's LinkedIn page had not been updated since his previous employment with Mesquite and that Hornbeck has been employed as the HSE Director since his return to Mesquite in 2019. Hornbeck also attests that he has worked exclusively as the HSE Director since his employment by Standard in April of 2019. Finally, the affidavit of Jerry Mathews, Production Supervisor for Spur Energy Partners, LLC, indicates that Hornbeck attended a meeting called by Spur "as the safety person for Mesquite Services." While this evidence makes a compelling case against Standard's claim that Hornbeck breached his work agreement, at this point we must decide only whether Standard has established a prima facie case by clear and specific evidence. *West*, 573 S.W.3d at 243 n.9; *D Magazine*

Standard also contends that it presented clear and specific evidence of breach by all appellants due to Hornbeck's solicitation of Standard's customers, specifically Spur Energy Partners. Standard attempts to establish this solicitation through the affidavit of D'Alise which states, "In mid[-]June of 2019, while legally bound by Standard's non-compete/non-solicitation [agreement], I personally witnessed Gene Hornbeck soliciting Standard's customers, Spur Energy Partners, on behalf of Mesquite." While appellants presented significant evidence in negation of this allegation,[13] we conclude that this statement by D'Alise is not clear and specific evidence that appellants breached a contract by trying to solicit business from Standard customers. First, nothing in this statement, even if accepted as true, identifies how Mesquite and Blackwater breached a contract since these entities were under no contractual obligation to Standard. Second, D'Alise does not identify any of the facts upon which he based his conclusion that Hornbeck solicited Spur's business. *See In re Lipsky*, 460 S.W.3d at 592-93; *Nichols*, 153 S.W.3d at 170-71. Because D'Alise's unsupported statement amounts to nothing more than a conclusory statement, it is not probative and does not meet the requirement of clear and specific evidence. *In re Lipsky*, 460 S.W.3d at 592-93.

As for the element of damages caused by Hornbeck's alleged breach of contract, Standard included Hornbeck's work agreement in its evidence in response to appellants'

---

*Partners, L.P.*, 529 S.W.3d at 440 & n.9. A finding that Standard has met its TCPA burden does not establish that its allegations are true. *West*, 573 S.W.3d at 243 n.9.

[13] Appellants presented the affidavit of the Production Supervisor for Spur, Mathews, in which he attested that he called a meeting with representatives of companies with whom Spur had been doing business and that Hornbeck attended as Mesquite's safety person. Mathews stated that Hornbeck did not solicit Spur's business for Mesquite at that meeting and that, "[n]o actions of Gene Hornbeck or any other Mesquite Services employee caused Spur Energy to make any business decisions with regard to who they would use to provide services to them." While this evidence is compelling regarding whether appellants breached a contract by soliciting Spur Energy's business, at this point we must decide only whether Standard has established a prima facie case by clear and specific evidence. *West*, 573 S.W.3d at 243 n.9; *D Magazine Partners, L.P.*, 529 S.W.3d at 440 & n.9.

motion to dismiss. This work agreement provides for liquidated damages in the amount of $1,000 per day that Hornbeck violates the agreement. We conclude that this evidence is clear and specific evidence to state a prima facie claim for damages caused by Hornbeck's breach of contract if not rebutted or contradicted. *See id.* at 590.

For the foregoing reasons, we conclude that Standard presented clear and specific evidence sufficient to state a prima facie case of breach of contract against Hornbeck for his alleged violation of the covenant not to compete found in the work agreement between Hornbeck and Standard. However, we conclude that Standard did not present clear and specific evidence to state a prima facie claim for breach of contract against all appellants for violation of the non-solicitation clause of the work agreement.

Misappropriation of Trade Secrets

Standard also brought a claim against appellants for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act. *See* §§ 134A.001-.008 (West 2019). The elements of a claim of misappropriation of trade secrets require proof that (1) a trade secret existed, (2) the trade secret was acquired through breach of a confidential relationship or through other improper means, (3) the secret was utilized by the defendant without the plaintiff's authorization, and (4) plaintiff was injured as a result. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366-67 (Tex. App.—Dallas 2009, pet. denied) (op. on reh'g).

Standard's evidence in support of its claim that appellants misappropriated trade secrets is not clear and specific evidence of a prima facie case because it wholly fails to establish that Standard took any efforts to protect its alleged trade secrets regarding who it employs and the identity of its customers. *See Rugen v. Interactive Business Sys.*, 864

S.W.2d 548, 552 (Tex. App.—Dallas 1993, no pet.) ("When an effort is made to keep material important to a particular business from competitors, trade secret protection will be available.").

However, even beyond this deficit, Standard's evidence essentially paints a picture that multiple employees of Standard quit and went to work for Mesquite or Blackwater. The simple fact that Standard employees chose to work for Mesquite or Blackwater does not present a prima facie case of misappropriation of trade secrets. Standard presented evidence that one customer contacted Standard to inform it that he was going to have Mesquite haul his water rather than continuing to use Standard. But this evidence does not indicate that Mesquite used proprietary information obtained from Standard to persuade this customer to switch water haul providers. Jack Yates, a Standard manager, attested that he "learned" of instances when a former Standard employee made efforts to recruit Standard trucking managers. However, the only factual predicate upon which Yates bases his conclusion is the supposed recruitment of David Clay Harris. Notably, Yates's affidavit expressly states that Harris denied being recruited by Mesquite. Finally, Standard points to D'Alise's affidavit which states that he witnessed Hornbeck's alleged solicitation of Spur. However, as discussed above, this evidence is conclusory and, therefore, is not probative. *See In re Lipsky*, 460 S.W.3d at 592-93; *Nichols*, 153 S.W.3d at 170-71. Certainly, such a conclusory allegation is insufficient to establish a claim for misappropriation of trade secrets by Mesquite and Blackwater. Consequently, we conclude that Standard did not present clear and specific evidence to establish that appellants misappropriated Standard's trade secrets.

Tortious Interference with Existing Contract

Standard asserted a claim against appellants for tortious interference with existing contract. To establish a claim for tortious interference with existing contract, a plaintiff must show that (1) it had a valid contract, (2) defendant willfully and intentionally interfered with that contract, (3) the interference proximately caused plaintiff injury, and (4) plaintiff suffered actual damage or loss. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

As above, Standard's claim of tortious interference rests on anecdotal statements that essentially boil down to Standard's suspicion that Mesquite and Blackwater have recruited Standard employees for the purpose of soliciting Standard customers to become Mesquite or Blackwater customers. Nothing in the evidence presented by Standard specifies any factual basis for its conclusions that Mesquite and Blackwater were soliciting Standard employees or customers. As such, this constitutes no evidence. *See In re Lipsky*, 460 S.W.3d at 592-93; *Nichols*, 153 S.W.3d at 570-71.

Standard claims that four former employees of Standard went to work for Mesquite and Blackwater and that each of these former employees were solicited in violation of their work agreements with Standard. However, Standard does not identify any details as to how these individuals were solicited nor that any solicitation was at the direction of Mesquite and Blackwater. In an effort to provide some detail, Standard includes a handwritten statement from a Blake Roberson that indicates that, in April of 2019, a former Standard employee and current Mesquite employee offered Roberson a "pump truck" that would be ready by the end of the month. However, nothing in this statement reflects that any solicitation was being directed by Mesquite or Blackwater. In fact, the statement does

19

not even explicitly indicate that Roberson was being solicited with a "pump truck" of Mesquite's or Blackwater's. We also note that there is nothing authenticating this statement since it was not supported by an affidavit from Roberson.

Based on the evidence presented, we conclude that Standard did not present clear and specific evidence to establish that appellants tortiously interfered with any existing contract.

Conspiracy

Standard asserted a claim for conspiracy against all appellants. To establish a claim for civil conspiracy, a plaintiff must show that: (1) a combination of two or more persons, (2) seeking to accomplish an object or course of action, (3) reach a meeting of the minds, (4) and commit one or more unlawful acts, (5) which is the proximate cause of damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). Civil conspiracy is a "derivative tort," meaning "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Warner Bros. Entm't v. Jones*, 538 S.W.3d 781, 813-14 (Tex. App.—Austin 2017), *aff'd by*, No. 18-0068, 2020 Tex. LEXIS 397 (Tex. May 8, 2020) (quoting *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding)).

Standard's claim of civil conspiracy is premised on the underlying torts of misappropriation of trade secrets and tortious interference with existing contracts. As addressed above, Standard failed to present clear and specific evidence to establish a prima facie case of either misappropriation of trade secrets or tortious interference with

20

existing contract. Consequently, such claims cannot be the underlying torts necessary to support Standard's civil conspiracy claim.

Standard also asserts a claim that appellants committed a civil conspiracy to breach fiduciary duties owed by the former employees to Standard. The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship existed between the plaintiff and the defendant; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in injury to the plaintiff or benefit to the defendant. *Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.).

The work agreements clearly created a fiduciary duty that the former Standard employees owed Standard. However, again, Standard bases its claims that its former employees breached this fiduciary duty on their bare assertions that these people used confidential information to solicit Standard's customers and employees. Standard even acknowledges that its claim for conspiracy to commit breach of fiduciary duty factually overlaps with its claims for misappropriation of trade secrets, tortious interference with existing contract, and breach of contract. We have previously addressed each of these claims and concluded that Standard has only met its burden to provide clear and specific evidence of a prima facie case for its claim of breach of contract relating solely to Hornbeck individually. And, even as to that claim, Standard specifies that its fiduciary duty claim is premised on the non-disclosure and non-solicitation provisions of the work agreement rather than the non-competition provision for which we concluded that Standard has met its burden under the TCPA. Consequently, we conclude that Standard did not present clear and specific evidence to establish its prima facie claim that appellants were engaged in a civil conspiracy.

21

<u>Promissory Estoppel</u>

Finally, Standard asserted a claim for promissory estoppel. The elements of a claim of promissory estoppel are: (1) defendant made a promise to plaintiff, (2) plaintiff reasonably and substantially relied on the promise to its detriment, and (3) plaintiff's reliance was foreseeable to defendant. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002).

Standard's claim of promissory estoppel is based on Wright's alleged promise that Mesquite and Blackwater would honor the former Standard employees' work agreements and not allow unlawful competition or solicitation of Standard's employees or customers. While we have previously determined that Standard stated a prima facie case that Hornbeck may have violated the non-competition clause of his work agreement, we have not found there to be clear and specific evidence that Mesquite or Blackwater has been shown to have encouraged any individuals to violate the covenants in their work agreements with Standard.[14] Further, D'Alise characterized the promise as follows: "It was my understanding that . . . Mesquite [and] Blackwater[] would honor Standard's Work Agreement and not solicit Standard's managers." Such an "understanding" does not appear to be "an actual promise" that is "sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action." *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.]

---

[14] Appellants presented the affidavit of Wright explaining that Mesquite and Blackwater never asked any former Standard employee to disclose any confidential information regarding Standard or its customers, specifically informed those former Standard employees not to do anything that would be in violation of their agreements with Standard, and requested Standard inform Mesquite and Blackwater if Standard heard of any former employee taking any action that it believed to be in violation of the work agreement. While this evidence tends to refute Standard's allegations, at this point we must decide only whether Standard has established a prima facie case by clear and specific evidence. *West*, 573 S.W.3d at 243 n.9; *D Magazine Partners, L.P.*, 529 S.W.3d at 440 & n.9.

2015, no pet.). Thus, we conclude that Standard failed to present clear and specific evidence to establish a prima facie case that Mesquite and Blackwater made a promise to Standard that estopped them from taking an action that they subsequently took.

Conclusion

After reviewing the evidence favorable to Standard, *see Buckingham Senior Living Community, Inc.*, 2020 Tex. App. LEXIS 4230, at *9, we conclude that Standard has presented clear and specific evidence sufficient to establish a prima facie case that Hornbeck breached the non-compete portion of his work agreement by working for Mesquite in a competitive position. However, as to all other claims asserted by Standard, we conclude that it has failed to present clear and specific evidence that is sufficient to state a prima facie claim.

The Commercial Speech Exemption

Standard also contends that their claims are not subject to the TCPA because they are exempted by the statute's commercial speech exception. *See* § 27.010(b) (West 2020).[15]

The commercial speech exemption applies to certain communications related to a good, product, or service in the marketplace. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 690 (Tex. 2018) (per curiam). These communications are those that are not made as a protected exercise of free speech but, rather, as commercial speech that

---

[15] Amended by Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 9, 2019 Tex. Gen. Laws 684, 686. The amendment moves subsection (b) to (a)(2) and adds multiple ways for the exemption to be invoked. However, the amendment expressly provides that this change in law applies only to a legal action filed on or after the September 1, 2019 effective date of the amendment. *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687. Consequently, further references to subsection 27.010 will refer to the pre-amended version of the statute.

simply proposes a commercial transaction. *Id.* The Texas Supreme Court has identified the following elements that indicate when the exemption applies:

> (1) the defendant was primarily engaged in the business of selling or leasing goods,
>
> (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,
>
> (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and
>
> (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Id.* at 688. The burden of establishing the exemption is on the party seeking it. *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 152 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Standard's claim that the commercial speech exemption applies to its claims is based on its allegation that the appellant companies solicited Standard employees to come work for them. Then, according to Standard, these employees communicated with Standard's customers attempting to persuade the customers to switch providers. Initially, we construe the exemption not to apply to any effort on the part of Mesquite and Blackwater to solicit Standard's employees to change jobs since these communications would not have been made in appellants' capacity as a seller or lessor of those goods, are not the kind of goods appellants provide, and are not communications with actual or potential customers of Standard. *See Castleman*, 546 S.W.3d at 688. Further and as has been discussed extensively above, as Standard has failed to establish a prima facie case that Mesquite and Blackwater used information derived from former Standard

24

employees to solicit Standard's customers, Standard has not met its burden to show that the commercial speech exemption applies to Standard's claims.

## Attorney's Fees and Sanctions

Finally, appellants contend that the trial court erred in failing to award them attorney's fees and sanctions. Because we agree that the trial court erred in failing to dismiss all but one of Standard's claims, we agree that it erred in not awarding attorney's fees and sanctions to appellants.

The TCPA mandates an award of court costs, reasonable attorney's fees, other expenses incurred in defending against the legal action, and sanctions if the TCPA is determined to apply and the plaintiff fails to provide clear and specific evidence of the essential elements of its claims. § 27.009(a)(1), (2).[16] Because we have concluded above that the trial court erred in denying appellants' motions to dismiss all of Standard's claims other than its claim for breach of contract brought against Hornbeck, individually, we must conclude that the trial court also erred in refusing to award appellants their court costs, reasonable attorney's fees, and other expenses incurred in defending against Standard's suit. § 27.009(a)(1). Additionally, we conclude that the trial court erred in failing to award sanctions against Standard. § 27.009(a)(2). We remand the case to the trial court to determine the appropriate award of damages and costs to be made in appellants' favor.

---

[16] *See* footnote 6.

Conclusion

For the foregoing reasons, we affirm the trial court's denial of appellants' motion to dismiss Standard's claim for breach of contract asserted against Hornbeck individually. As to all other claims, we reverse the trial court's denial of appellants' motion to dismiss. We remand the case to the trial court with directions for it to dismiss all of Standard's claims other than the breach of contract claim against Hornbeck, enter an appropriate award of attorney's fees and costs in favor of appellants, and impose a monetary sanction against Standard.  *See* § 27.009(a)(1), (2).

Judy C. Parker
Justice

Hatch, J., concurring.